# Richmond

## COMMONWEALTH OF VIRGINIA V. IMPERIAL COAL SALES COMPANY, INCORPORATED.

January 12, 1933.

Present, All the Justices.

REHEARD, RICHMOND, JANUARY 11, 1934.

Present, All the Justices.

The opinion states the case.

*W. W. Martin* and *Henry R. Miller, Jr.,* for the Commonwealth.

*Caskie, Frost & Coleman* and *F. P. Christian, Jr.,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The Commonwealth of Virginia applied for and obtained a writ of error to a judgment of the Circuit Court of the city of Lynchburg, whereby the defendant in error, the Imperial Coal Sales Company, Incorporated, was exonerated and relieved from the payment of State taxes upon its capital, and upon its income.

There is no disagreement between the parties as to the facts involved and they may be stated thus:

The defendant in error, which will hereafter be referred to as the Sales Company, was assessed with a capital tax under section 73 of the Tax Code of Virginia (see Code of 1930, Appendix, p. 2147), for the years 1928, 1929 and 1930, aggregating $1,579.69, and an income tax, under section 52 of that Code (see Code 1930, Appendix, p. 2143), for the year 1930, amounting to $158.34. These assessments, upon the application of the Sales Company, were cancelled and set aside by the judgment here under review.

The Sales Company is a domestic corporation with its principal office in Lynchburg, Virginia, but it maintains a branch office in Cincinnati, Ohio. It conducts a sales

agency and its sole business is that of selling coal for foreign coal mining corporations, whose business and mines are all located outside of the State of Virginia, to-wit: In West Virginia. It not only sells the coal, but it directs and manages its shipment and transportation, collects the proceeds of sales, and is paid a commission of eight per cent. No coal of any consequence is sold in Virginia. It is sold in carload lots, in many other States.

The Sales Company does not own, conduct or lease any coal mines and does not mine any coal. None of the coal which is sold is located in Virginia at the time of the sale.

The Sales Company does not own or operate any warehouses or coal storage yards in Virginia. It does not retail any coal, or buy, or own any coal, but only sells the coal for its West Virginia principals in carload lots, f. o. b. mines, for a continuous journey from the point of shipment in West Virginia to the purchasers, who are located in States other than Virginia. The situs of all the coal at the time of sale is outside of Virginia.

The contracts for the sale of coal are made between the Sales Company and the purchaser, who knows in every instance the principal, and the kind of coal and the mine from which it is to be shipped. In some instances where the coal is sold in great quantities the purchaser requires the principal to approve the contract.

In cases where the coal is not sold by the general manager himself, but sold through the Cincinnati office, the contracts are forwarded to the Lynchburg office for approval, as the Sales Company guarantees the solvency of the purchasers. When the contract of purchase is approved the Lynchburg office sends orders to the mines for the shipment of the coal, directing the kind of equipment to be used and the routing of same. The records of the sales to the various purchasers, the price per ton of the coal and an account with the mines from which the coal is shipped are kept in the Lynchburg office.

Under the contract with the mines the Sales Company is required to pay for all coal shipped during the preced-

ing month on the 20th day of the following month. The purchasers, in turn, agree to pay the Sales Company on the 20th day of the month for coal shipped to them in the preceding month. The Sales Company collects the money from the purchasers and it is deposited in bank in Lynchburg. From these proceeds the mines are paid for the coal shipped on the 20th day of each month, less the agent's commission. If the purchasers do not pay for the coal at the time agreed, then the Sales Company has to advance to the mining company the amount due them for the coal they have shipped.

It was stipulated by counsel for the parties, that the property constituting the basis of the assessment on capital was, on the dates in question, the property of the Sales Company; and the income assessed was income earned by the Sales Company and that the assessments as made are correct if the Sales Company is subject to any capital or income tax whatever, during the years in question.

In the court below and in this court, the Sales Company has contended and does contend that it is not assessable with the taxes here in question because (a) the tax statutes referred to, and which will later be quoted, do not authorize the imposition of the taxes and have no application to it, and (b) if they are applicable to it the assessments are invalid because the said assessments constitute a direct burden upon interstate commerce in violation of article 1, section 8, sub-section 3, of the Constitution of the United States.

The trial court, in its opinion, held that inasmuch as the Sales Company did, exclusively, an interstate business, the taxes imposed, both capital and income, were a burden upon interstate commerce and therefore invalid, and the order and judgment here complained of followed.

We will first advert to the construction of section 52 of the Tax Code, under which the assessment for income was made, to ascertain whether that assessment was authorized by that section. It reads in part as follows: "Every domestic corporation * * * doing business in this

State * * * shall pay for each taxable year a tax to be computed by the Department of Taxation upon the entire net income, as herein defined, of such corporation, derived from business done, property located or sources in this State * * *." It is at once seen that the essentials of the statute are (1) that the corporation must be doing business in this State, and (2) the net income must be derived from business done, property located or sources in this State. If these essentials do not exist in respect of the business done by the Sales Company, the income tax is not authorized by the statute.

■ This brings us to the pertinent inquiry of whether or not the Sales Company does business in this State and has income derived therefrom within the purview of the statute.

The answer must be found by adverting to the undisputed facts. They show, beyond doubt, that in substance, the sole business of the Sales Company is that of selling coal, under contracts, in interstate commerce.

It is true, by maintaining the Lynchburg office the Sales Company, in a limited sense, is doing business in Virginia, but that business arises out of, is inseparable from and incidental only to, the principal business of selling coal in interstate commerce. The so-called Virginia business is simply one of the necessary results of the interstate business done, upon which the Virginia business is founded and continues, and without which it could not exist. It is a consequence which follows in the chain of events, all others of which take place outside of Virginia. The business done in the Lynchburg office, severed from the principal business of selling coal in interstate commerce, would be reduced, almost immediately, to nothing. In other words, the real business of the Sales Company is selling coal in interstate commerce, and not the activities necessary to keep books of accounts, bank accounts and other clerical work, such as is done in the Lynchburg office.

■ The test as laid down in *Dalton Add. Mach. Co.* v.

*Commonwealth,* 118 Va. at p. 574, 88 S. E. 167, 171, " to determine whether a foreign corporation transacts such intrastate business as can be reached by State taxation is *whether domestic business is substantial in its* essence, and whether it may reasonably be separated from its interstate commerce; and the question does not depend upon a comparison of its intrastate with its interstate commerce," applies to the case at bar, and it is clear that this case does not measure up to the test because the so-called domestic business of conducting the office is not substantial in its essence; it is only incidental and it certainly could not be separated from its interstate business. Again at page 571 (88 S. E. 167, 170) of the *Dalton Case,* "* * * it is the character of the transaction and not the citizenship or the location of the parties, that determines whether it is interstate or intrastate commerce. The courts will, therefore, endeavor to ascertain the real character of the transaction."

Our conclusion is that the Sales Company does no business in Virginia that "is substantial in its essence" and that "may reasonably be separated from its interstate commerce" and, therefore, authority for the imposition of the income tax in controversy cannot be found in section 52 of the Tax Code, under which the present assessment for income was made. Having reached this conclusion, it becomes unnecessary to pass upon the constitutionality of the income tax.

We now proceed to the capital tax. The view we have taken of the capital tax is that in any event it is invalid because it contravenes article 1, section 8, sub-section 3, of the Constitution of the United States, and therefore it becomes unnecessary to pass upon the construction of section 73 of the Tax Code under which the assessment was made. However, it is necessary to refer to the statute which in part is in this language:

"All capital of any trade or business of any person, firm or corporation, except the capital of any trade or business

which is otherwise specifically taxed or specifically exempt from taxation.

"Capital as used herein is defined as follows:

"First. The inventory of stock on hand, which shall include all materials for use in the business, whether at the place of business, in storage or elsewhere in the State.

"Second. The excess of all bills and accounts receivable over bills and accounts payable.

"Third. All money on hand and on deposit.

"Fourth. All other taxable personal property of any kind whatever, including all choses in action, equities, demands and claims, but excluding the property hereinafter specifically mentioned in this section. * * *"

"All capital of any trade or business of any person, firm or corporation" is defined by the statute to mean: First, the inventory, etc.; second, the excess of all bills and accounts receivable over bills and accounts payable; third, all money on hand and on deposit, and, fourth, all other taxable personal property of any kind whatever, etc. The assessment made on the capital of the Sales Company, which appears from the notice of the assessment filed as a part of the record, was based on the money on hand, plus the excess of the bills and accounts receivable over the bills and accounts payable. Nothing was assessed under the "First" and "Fourth" headings of the statute. There was no stock on hand or inventory of any tangible personal property as described in "First" and no property as described under "Fourth."

It is interesting to note that section 73 of the Tax Code is found under chapter 7 and its title is "Intangible Personal Property," yet in "First" of section 73, reference is made directly to tangible personal property by the statement "the inventory of stock on hand, which shall include all materials for use in the business," which necessarily means tangible and not intangible property.

■ What has been said about doing business in Virginia, in connection with the income tax, applies here and in considering this phase of the case it must be borne in

mind that the tax sought to be imposed is one upon property which is entirely intangible and which is used wholly and exclusively in interstate commerce. No part of this property is used in any Virginia transaction whatever. It produces absolutely nothing in this State. The money in the Lynchburg bank and the bills and accounts receivable in the Lynchburg office, which are the subjects of the tax, are in those respective places, not because of any intrastate transactions, but because of the exclusively interstate business the Sales Company is conducting. The very creation and existence of this intangible property is traceable directly to interstate commerce. It is a necessary and inseparable outgrowth of that commerce. It, in fact, is a part of the interstate commerce that the Sales Company conducts.

In passing, it may be well to call attention to section 427 of the Tax Code (see Code of 1930, Appendix, p. 2251), not only for the purpose of showing what property is exempt from an *ad valorem* and income tax, but for the additional purpose of showing the legislative policy of the State which seems to be in favor of exempting the Sales Company, under the peculiar facts in this case, and other like corporations, doing a similar business, from any capital or income tax. When section 427 is read and considered, along with the other related sections, it unmistakably shows a strong leaning and intent on the part of the law-makers to exclude such corporations as the Sales Company from State tax action. Section 427, in part, is as follows: "No income tax nor *ad valorem* taxes * * * shall be imposed upon the * * * capital or other intangible property * * * owned by corporations organized under the laws of this State for any tax year during which such corporations do, or have done, no part of their business within this State * * *." However, we prefer to rest the decision of the validity of the capital tax here considered upon the broad proposition that it is invalid because it is a burden upon interstate commerce and forbidden by the Constitution of the United States.

Counsel have referred us to no case, and in our some-what extensive investigation we have not found one, which is similar to the case at bar. We have carefully considered the cases relied upon by the Commonwealth and we do not think they support the constitutionality of the tax here sought to be imposed.

The case of *St. Louis & S. W. Ry. Co.* v. *Nattin,* 277 U. S. 157, 48 S. Ct. 438, 72 L. Ed. 830, is not in point. In that case the railway company owned a line of railroad lying partly in Bossier Parish, Louisiana, also all of the stock of the corporate owner of a bridge over Red river in Bossier City. An *ad valorem* tax was imposed on the railway company upon all of its property within the taxing dis-trict to provide the funds to meet certain road bonds. The court held that "Without doubt a local legislative body, when properly authorized, may lay general *ad valorem* taxes upon all property within its jurisdiction, including that of common carriers engaged in interstate commerce, without violating the Federal Constitution. That such taxation does not amount to regulation of interstate com-merce is settled doctrine."

In that case no capital or income tax was involved. The corporation was doing business in that jurisdiction and had therein tangible assets upon which the tax could be laid. In the case at bar, the facts are entirely different. There is no tangible property in Virginia upon which the tax can be laid. The assessment was made upon intangi-ble property only, described as capital. In the *Nattin Case,* an entirely different kind of tax was involved.

In *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, 17 S. Ct. 305, 41 L. Ed. 683, and upon rehearing under the same style, 166 U. S. 185, 17 S. Ct. 604, 607, 41 L. Ed. 976, the express company was a New York corporation, transacting an express business throughout the United States, and its total tangible property was valued at about $4,000,000, while its intangible property was valued at about $12,000,000. The tangible property was spread through the several States and in round figures about

$25,000 of it was in real estate in Ohio and about $42,000 of it in tangible personal property in the same State. The tax assessed by Ohio was arrived at by the "unit rule," and in determining the value of the property of the express company in the State of Ohio to be taxed, the computation was based upon the entire value of all of the property of the company in the United States, and the value of the Ohio property was arrived at through a form of proportion which the Ohio property bore to the entire property of the company throughout the entire United States. The court said: "Where is the situs of this intangible property? Is it simply where its home office is * * * or in the State which gave it its corporate franchise; or is that intangible property distributed wherever its tangible property is located and its work is done? Clearly, as we think, the latter. Every State within which it is transacting business and where it has its property, more or less, may rightfully say that the $16,000,000 of value which it possesses springs, not merely from the original grant of corporate power by the State which incorporated it, or from the mere ownership of the tangible property, but it springs from the fact that that tangible property it has combined with contracts, franchises and privileges into a single unit of property, and this State contributes to that aggregate value not merely the separate value of such tangible property as is within its limits, but its proportionate share of the value of the entire property. * * * It may be true that the principal office of the corporation is in New York, and that for certain purposes the maxim of the common law was 'Mobilia personam sequunter,' but that maxim was never of universal application and seldom interfered with the right of taxation. *Pullman's Palace-Car Co.* v. *Penna.,* 141 U. S. 18, 22, 11 S. Ct. 876 [35 L. Ed. 613, 616, 3 Inters. Com. Rep. 595]. It would certainly seem a misapplication of the doctrine expressed in that maxim to hold that by merely transferring its principal office across the river to Jersey City the situs of $12,000,000 of intangible property, for purposes of taxa-

tion was changed from the State of New York to that of New Jersey." The tax was upheld.

It is obvious that the *Express Cases* have no bearing upon the case at bar. The Sales Company transacts no business in Virginia and possesses no tangible property here. Another very important distinction is that the tax here imposed was not based on the "unit rule" as was done in the *Express Cases.* Section 73 of the Tax Code does not authorize any such valuation. In the *Express Cases,* Ohio, by the Supreme Court decision, was allowed to include the intangible property because there was in those cases a basis or foundation to rest it upon, to-wit, (1) tangible property in that State, and (2) substantial intrastate business done there, both of which are entirely lacking in the case at bar.

The Sales Company relies upon the principles announced in *Ozark Pipe Line Corp.* v. *Monier,* 266 U. S. 555, 45 S. Ct. 184, 185, 69 L. Ed. 439. There the corporation was incorporated under the laws of Maryland and had a pipe line running through the State of Missouri, through which it transported oil in interstate commerce. It had its principal office in Missouri, kept its books and bank accounts there; paid its employees in the State from its office, engaged therein labor to conduct its pumping plants to accelerate the passage of oil and owned and operated automobiles and trucks in connection with its business. It neither received nor delivered any oil in Missouri. That State undertook to assess a tax, styled a franchise tax, under a statute which provided the means of ascertaining the tax. It required every corporation not organized under the laws of Missouri, but engaged in business therein, to pay an annual franchise tax equal to one-tenth of one per cent of the par value of its capital stock and surplus employed in business in the State. For the purpose of the tax the corporation is deemed to have employed in the State "that proportion of its entire capital stock and surplus that its property and assets in this State bear to all its property and assets wherever located." The cor-

poration was required to report, giving the amount of its capital stock, the par value and market value thereof and other information as a basis for the computation of the tax. The Supreme Court held the tax invalid because it was a burden on interstate commerce and in the course of the opinion said:

"* * * It long has been settled that a State cannot lay a tax on interstate commerce in any form, whether on the transportation of subjects of commerce, the receipts derived therefrom, or the occupation or business of carrying it on. *Leloup* v. *Mobile,* 127 U. S. 640, 648, 8 S. Ct. 1380, 32 L. Ed. 311, 314 [2 Inters. Com. Rep. 134]; *Kansas City, Ft. S. & M. R. Co.* v. *Botkin,* 240 U. S. 227, 231, 36 S. Ct. 261, 60 L. Ed. 617, 618, and cases cited. Plainly, the operation of appellant's pipe line is interstate commerce, and beyond the power of State taxation. *Eureka Pipe Line Co.* v. *Hallanan,* 257 U. S. 265, 272, 42 S. Ct. 101, 66 L. Ed. 227, 231; *United Fuel Gas Co.* v. *Hallanan,* 257 U. S. 277, 42 S. Ct. 105, 66 L. Ed. 234. But the contention in justification of the tax is that appellant is also engaged in doing local business, the basis of such contention being the facts concerning its ownership and use of property other than the pipe line, and its various acts and activities within the State hereinbefore recited; and, further, that the purposes for which it is incorporated, as declared in its articles, comprehend other activities than that of transporting petroleum; namely, the acquisition and operation of telegraph and telephone lines, dealing in and transporting merchandise, etc.

"An extended review of the decisions of this court dealing with this phase of the subject is not necessary. All proceed from the same principles, but range themselves on one side or the other of the line, as the facts do or do not demonstrate that the tax, as a practical matter, constitutes a burden upon interstate commerce. The facts upon which these former decisions rest, therefore, must be borne in mind in applying them to other and alleged similar cases. If the business taxed is in fact separate

local business, not so connected with interstate commerce as to render the tax a burden upon such commerce, the tax is good. An illustration of such a tax is found in *New York ex rel. Pennsylvania R. Co.* v. *Knight,* 192 U. S. 21, 24 S. Ct. 202, 48 L. Ed. 325, * * *

" 'Wherever a separation in fact exists between transportation service wholly within the State and that between the States, a like separation may be recognized between the control of the State and that of the nation. *Osborne* v. *Florida,* 164 U. S. 650 [17 S. Ct. 214, 41 L. Ed. 586] ; *Pullman Co.* v. *Adams,* 189 U. S. 420 [23 S. Ct. 494, 47 L. Ed. 877].' On the other hand, in *Norfolk & W. R. Co.* v. *Pennsylvania,* 136 U. S. 114, 120, 10 S. Ct. 958, 960 (34 L. Ed. 394, 397 [3 Inters. Com. Rep. 178]), a Pennsylvania tax of similar character, sought to be imposed upon a Virginia railroad corporation, was held bad."

That case in several respects is similar to the case at bar. There, the corporation maintained its principal office in Missouri. It conducted its financial transactions there; engaged and paid from its office a large force of employees; conducted auxiliary pumping stations in the State and owned and operated trucks and automobiles in its business, but it actually received and delivered no oil in the State, though its pipe line ran through it. Another point of similarity is in the nature and character of the tax sought to be imposed. It is true, the tax was called a franchise tax, but in reality it was a property tax, for it was arrived at by taking from the corporation a percentage of its capital and surplus employed in business in the State, and to determine what capital and surplus was so employed, it fixed as the method, "that proportion of its entire capital stock and surplus that its property and assets in this State bear to all its property and assets wherever located." So it is seen, that while the tax was called a franchise tax, it was, in reality, a property tax. It has been repeatedly held that it is the character of the tax and not the name given it that governs in cases of this kind.

No oil business was done in Missouri and no coal business was done by the Sales Company in Virginia. In the Missouri case the fact that the general office of the corporation was located there did not render the business done intrastate business, and the fact that the general office of the Sales Company is in Virginia does not change the character of its business from interstate to intrastate. There was no intrastate business done in Missouri. It was all interstate business, just as the business of the Sales Company. The maintenance and conduct of the office in Missouri was only incidental to the principal interstate business of transporting oil.

The principles of the Missouri case are applicable to the case at bar, and we think they show that the tax sought to be imposed upon the Sales Company is a burden upon interstate commerce and invalid.

Another case relied upon by the Sales Company is *Alpha Portland Cement Co.* v. *Mass.*, 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219. In that case, Massachusetts assessed the Cement Company with what was termed an excise tax. By reference to the footnote appended to the opinion in the case, the statute, under which the tax was imposed, will be found, and from it is seen that the tax was on income and corporate excess employed within the State. The Cement Company was a New Jersey corporation, maintaining an office in Boston, Massachusetts, which was in charge of a district sales manager, with a clerk, where its business activities in connection with the receipt of orders and shipments of goods for the New England States were conducted. The general office of the corporation was in Easton, Pennsylvania. The court held that the tax was invalid, quoting with approval this language from the case of *St. Louis S. W. R. Co.* v. *Arkansas,* 235 U. S. 350, 35 S. Ct. 99, 103, 59 L. Ed. 265:

" 'So far as the commerce clause is concerned, it seems to us that the principles upon whose application the present decision must depend are those set forth in

*Postal Teleg. Cable Co.* v. *Adams,* 155 U. S. 688, 695, 15 S. Ct. 268, 360, 39 L. Ed. 311, 315, 5 Inters. Com. Rep. 1, where the court, by Mr. Justice Fuller, said: "It is settled that where, by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a State on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained. But property in a State, belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a State, and may take the form of a tax for the privilege of exercising its franchises within the State, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the State (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes." ' "

In that case, the maintenance of the Boston office and work done there were not sufficient foundations on which to base the State tax.

See, also, the principles announced in *Cheney Brothers Co., et al.* v. *Mass.,* 246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632, and the cases there referred to.

In the case of *Commonwealth* v. *Castner, Curran & Bullitt,* 138 Va. 81, 121 S. E. 894, 900, this court was dealing with the validity of a license tax which had been imposed upon the company. No property tax was involved. The facts in that case are almost identical with the facts in the case at bar. The most notable difference is that the company was a foreign corporation. It was a coal sales agency dealing exclusively in selling coal from the West Virginia mines to purchasers in States other than Virginia, in interstate commerce. This court held that the

license tax was invalid because it was a direct burden upon interstate commerce. In the course of the opinion it was stated that the company is "doing business in this State, * * * but the business in which it is engaged is one that is not subject to State taxation." The Commonwealth seeks to avoid the force and effect of this statement, which so strikingly applies to the case at bar, by saying that the tax there was only a privilege tax; that no property or income tax, as is here involved, was before the court. This is true, and while we are aware of the material difference between a privilege tax and a capital and income tax, yet, we will apply the reasoning and principles there discussed to the case at bar because we think the business done by the Sales Company is not subject to State taxation.

■ From the principles gathered from the case it seems clear that a corporation engaged in interstate commerce may be taxed by a State on (1) its real estate and tangible personal property situated in the taxing State, and (2) upon its intangible personal property, if in the taxing State it does intrastate business or has any appreciable real or tangible property. But if it has no real or tangible property and does no intrastate business in the taxing State, it cannot be taxed by that State.

■ Many other cases may be found in which State taxation in relation to interstate commerce is discussed, but we deem it unnecessary to prolong the discussion. After a consideration of those we have examined, we are of opinion that where a capital tax under section 73 of the Tax Code is sought to be imposed upon a person, firm or corporation, which is doing no intrastate business, but is doing solely an interstate business, and has no appreciable real or tangible personal property in this State, the tax is invalid because it is a burden upon interstate commerce and contravenes article 1, section 8, sub-section 3, of the Constitution of the United States.

Having held that the pertinent section of the Tax Code (section 52) did not authorize the assessment of an in-

come tax upon the income of the Sales Company, it will not be necessary to discuss the cases relied upon by the Commonwealth to sustain the constitutionality of that tax.

The judgment of the trial court is affirmed.

*Affirmed.*

EPES, J., dissenting in part:

I concur in the conclusion of the court that Imperial Coal Sales Company, Incorporated, is not subject to the income tax assessed against it.

I dissent from the conclusion of the court in so far as it holds that the assessment of a State property tax upon the intangible personal property of a natural person or a domestic corporation is invalid *merely* because he or it uses such property in carrying on an interstate business. Upon principle, I think, such a holding is unsound, and stretches the compass, operation and effect of the interstate commerce clause of the Constitution of the United States far beyond its reasonable intendment. I do not understand that the Supreme Court of the United States has yet gone so far, and I am reluctant to believe that it will go so far. It is true that it has exercised an ingenuity in stretching the compass of this clause which in some instances rivals the ingenuity shown by Queen Dido in stretching the compass of her ox hide; and it may be that this court is correct in its surmise that the Supreme Court of the United States will hold that the *mere* fact that intangible personal property is used in carrying on interstate business wholly exempts it from any State property tax. As to this I do not essay to prophecy; but until it does so hold, pointedly and unequivocally, I think, this court should adhere to principle and not so hold.

Section 427 of the Tax Code, I think, has no application to a case such as this. It is intended to cover cases in which the person or corporation does not within the State do any business, not cases in which the person or corpora-

tion actively carries on within the State an interstate business.

Upon Rehearing, Richmond, January 11, 1934.

Campbell, C. J.:

This case was argued before this court at its November, 1932, term and on January 12, 1933, an opinion was handed down affirming the order of the lower court.

Upon the petition of the Commonwealth, a rehearing was granted and the case reargued. Upon mature consideration of the questions involved upon the rehearing, we are constrained to adhere to our former opinion, and the judgment of the Circuit Court is therefore affirmed.

*Affirmed.*

Epes and Hudgins, JJ., dissenting.