## Richmond

W. R. Ashburn, Etc., Et Al. v. Commonwealth of Virginia.

March 10, 1958.

Record No. 4767.

Present, All the Justices.

The opinion states the case.

*P. A. Agelasto, Jr.,* for the appellants.

*R. D. McIlwaine, III, Assistant Attorney General (Kenneth C. Patty, Attorney General,* on brief), for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

■ On December 21, 1942 and February 25, 1943, William J. Levitt and Alfred S. Levitt, residents of New York, obtained from the State Corporation Commission of Virginia charters for two corporations, one the Levitt and Sons of Norfolk, Incorporated and the other Levitt and Sons of Riverdale, Incorporated. Each of the Levitts acquired one half of the stock of each corporation, and they thereby became the sole beneficial owners of both corporations. The corporations acquired separate tracts of land in Norfolk county for the purpose of constructing rental housing units thereon. Each corporation subdivided its tract of land into 200 plots with appropriate streets, lanes and alleys, and constructed on each plot four rental housing units, totaling 800 housing units in each subdivision. Two hundred separate mortgages, totaling $2,280,000, were executed by each corporation to the R. F. C. Mortgage Company, a Maryland corporation, which mortgages were insured by the Federal Housing Administration under the provisions of the National Housing Act.

After completion of the housing units the mortgagor-corporations were unable to obtain a substantial number of tenants, and each corporation on or about November, 1943, notified the Federal Housing Administration that rental receipts from the projects were not sufficient to amortize the numerous mortgages outstanding. On the request of the Commissioner of the Federal Housing Administration, each corporation, one by deed dated November 26, 1943 and the other by deed dated December 31, 1943, conveyed its 200 plots with housing units, and all other real estate owned by it, to the mortgagee, and received therefor an acquittance of liability under the mortgages, and a release therefrom. The R. F. C. Mortgage Company, mortgagee, thereafter conveyed the properties to Abner H. Ferguson, the Federal Housing Commissioner.

Subsequently, Levitt and Sons of Norfolk, Incorporated discharged all of its debts and obligations, leaving for distribution to each of its stockholders $10,969.18 against the cost of his stock of $12,500. Levitt and Sons of Riverdale, Incorporated discharged all of its debts and obligations, leaving for distribution to each of its stockholders $9,676.90 against the cost of his stock of $12,500.

Pursuant to resolutions of the Boards of Directors of the two corporations, approved by the stockholders, both corporations were dissolved and their assets transferred to the stockholders in cancellation and redemption of their stock. On February 14, 1944, the charters of the two corporations were revoked by certificates of dissolution issued by the State Corporation Commission.

The National Housing Act (Mortgage Insurance, Title 12 U.S.C.A. 1713 (h) (1)), prior to its amendment on August 10, 1948, provided that if the net amount realized by the Federal Housing Administration from mortgaged property was sufficient to pay all claims and obligations, then any excess remaining should be paid to the mortgagor. In 1956 the Levitts, as former stockholders of the two corporations, were notified that there was an overage or excess arising from the management or sale of the mortgaged property by the Federal Housing Administration. Thereafter, under the provisions of Code, § 13-73, W. R. Ashburn was appointed and qualified as receiver for the two corporations, and collected from the Federal Housing Administration $109,298.33 as the excess due Levitt and Sons of Norfolk, Incorporated, and $145,408.70 as the excess due Levitt and Sons of Riverdale, Incorporated.

For the year 1956, the State Tax Commissioner assessed an income tax in the sum of $5,108.17 against Levitt and Sons of Norfolk, Incorporated, and in the sum of $6,805.41 against Levitt and Sons of Riverdale, Incorporated.

The receiver denied that the State Tax Commissioner had the authority to assess any income tax against the corporations, and filed a petition in the trial court, under the provisions of Code, § 58-1130, for the correction of the alleged unlawful and erroneous assessments. Upon the answer of the Commonwealth, the testimony of witnesses and a stipulation of facts, the trial court in its order declared that the assessments were not erroneous and dismissed the petition. To review that order this writ of error was awarded the receiver.

In this Court the receiver does not question the correctness of the amount of the assessments, but contends that the State Tax Commissioner is not authorized by statute to assess any income tax against a corporation which has been dissolved and its assets distributed, and which has conducted no business as such for approximately twelve years prior to the assessment.

The statutory law of Virginia provides for the creation and the dissolution of corporations; the continuance and the revival or resur-

rection of dissolved corporations. The provisions of Code, § 13-70 continue the existence of a dissolved corporation for a period of not more than three years after dissolution for the purpose of settling and closing out its business. If the business of the corporation is not entirely settled within the three year period, then it may be revived or resurrected by the appointment of a receiver, as was done in this case, under the provisions of Code, § 13-73, which are in part as follows:

"When *any corporation* of this State shall be dissolved in any manner whatever, the circuit court of the county, or the circuit, corporation or other court having equitable jurisdiction in the city where its principal office is located, on application of any creditors or stockholder of such corporation, at any time, may either continue such directors as trustees as provided in the preceding section, or appoint one or more persons to be *receiver or receivers of and for such corporation, to take charge of the estate or effects thereof, and to collect the debts and property due and belonging to the corporation,* with power to prosecute and defend, in the name of the corporation or otherwise, all such suits as may be necessary or proper for the purpose aforesaid, and to appoint an agent or agents under him or them, *and to do all other acts which might be done by such corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation;* and the powers of such trustees or receivers may be continued as long as the court shall think necessary for the purposes aforesaid. * * *" (Italics supplied).

The receiver received the funds as receiver for the corporations and not as receiver for the stockholders. Likewise, the tax in question was imposed upon the corporations for the funds belonging to the corporations and not for funds belonging to the stockholders.

The provisions of Code, §§ 13-70 and 13-73 for continuing and resurrecting dissolved corporations were first enacted by the General Assembly in 1903 (Acts 1902-3-4, c. 270, p. 473), and were in effect in 1926, when the provisions of Code, § 58-128, imposing a tax upon the income of corporations, were first adopted. Acts 1926, c. 576, p. 955. This latter statute imposes an income tax upon every domestic corporation organized under the laws of Virginia, whether created, dissolved, continued, revived or resurrected by the laws governing corporations. The pertinent part of Code, § 58-128, under which the State Tax Commissioner imposed the tax, provides as follows:

"Every domestic corporation organized under the laws of this

State and every foreign corporation doing business in this State * * * *shall pay for each taxable year a tax* to be computed by the Department of Taxation *upon the entire net income,* as herein defined, *of such corporation, derived from business done, property located or sources in this State;* and such tax is hereby annually levied for each taxable year." (Italics supplied).

The phrase "business done, property located or sources" is framed in the disjunctive and therefore the tax is imposed upon the "entire net income" derived from "business done" or "property located" or "sources" in Virginia. The funds under consideration were derived from property "located in" Virginia, and arose from the management or sale of that property by the Federal Housing Administration. Under the National Housing Act these funds were payable to the mortgagor-corporations under the mortgage contracts entered into by them. Furthermore, these funds are clearly within the definition of "gross income" stated in Code, § 58-78, which provides in part as follows:

"The term *'gross income',* as used herein, includes gains, profits and income derived from salaries, wages or compensation for personal services of whatever kind and in whatever form paid or from professions, vocations, trades, businesses, commerce or sales or *dealings in property, whether real or personal, growing out of the ownership, use or interest in such property;* also from rent, interest, dividends, securities or transactions of any business carried on for gain or profit or *gains or profits and income derived from any source whatever,* * * *" (Italics supplied).

The receiver contends that the corporations owned no property in Virginia in 1956, and that they could not derive income from property in which they had terminated every right of ownership twelve years previously. Code, § 58-78 does not limit gross income to gains or profits "growing out of the ownership" of property, but also includes gains and profits growing out of the "use or interest" in such property. Almost from the inception of the enterprises conducted by the two corporations, their interest in the property was that of mortgagors. When the corporations conveyed title to the property to the mortgagee and distributed their assets, the mortgagor-corporations became owners, under the National Housing Act, of a valuable, contingent interest in the property. Therefore, when that contingent interest became vested and payable to the corporations, and was actually paid to the receiver for them, the State Tax Com-

missioner was authorized by Code, § 58-128 to make the assessments in question.

The receiver contends that the decision of this Court in *Commonwealth* v. *Imperial Coal Sales Co.*, 161 Va. 718, 167 S. E. 268, is controlling of the issue in this case. That case involved a company engaged in selling coal on commission for nonresident coal mining companies to purchasers located in states other than Virginia. While the company maintained an office in Virginia for keeping records and accounts, its only business was selling coal under contracts in interstate commerce. There was no evidence tending to show that the company did business in Virginia, or received an income from business or property located in Virginia within the purview of § 52 of the Tax Code, now Code, § 58-128. It was held by a divided court that the company was engaged in interstate commerce exclusively, and received no income from business done in Virginia. No contention was even made that the income sought to be taxed was derived from "property located" or "sources" in this state. The facts are distinguishable and hence the decision is not pertinent to the question presented in this case.

For the reasons stated the order of the trial court is affirmed.

*Affirmed.*