317 S.E.2d 788 (1984)
COMMONWEALTH of Virginia, DEPARTMENT OF TAXATION
v.
B.J. McADAMS, INC.
Record No. 811921.
Supreme Court of Virginia.
June 15, 1984.
*789 Kenneth W. Thorson, Sr. Asst. Atty. Gen. (Gerald L. Baliles, Atty. Gen., Walter A. McFarlane, Deputy Atty. Gen., John G. MacConnell, Asst. Atty. Gen., on briefs), for appellant.
Alexander Wellford, Richmond (Christian, Barton, Epps, Brent & Chappell, Richmond, on brief), for appellee.
Present: All the Justices.
RUSSELL, Justice.
In this tax case, we must determine whether Virginia may lawfully impose a corporate income tax upon the part of the earnings of an interstate common carrier which is derived from transportation over Virginia highways. To make this determination, we must decide whether the carrier has "income from Virginia sources," as defined in Code § 58-151.02(g). If the carrier meets the statutory test so as to render it liable to Virginia income taxes, we must further determine whether the Virginia statutory scheme constitutes an undue burden upon interstate commerce, repugnant to the Commerce Clause of the Federal Constitution.
B.J. McAdams, Inc., is an Arkansas corporation engaged in the transportation of commodities in interstate commerce. The Virginia Department of Taxation exchanged correspondence with McAdams over a period of years, in which the Department advised McAdams that it was required to file Virginia corporate income tax returns and that it was liable to taxation upon that part of its income which was derived from Virginia sources. Ultimately, the Department informed McAdams that, in default of compliance with the Virginia tax laws, McAdams would be deprived of the necessary stamps and documents needed to operate its equipment on Virginia highways, pursuant to Code § 56-304.5.
On January 28, 1980, McAdams filed this proceeding in the court below, seeking a declaratory judgment and injunctive relief against the Commonwealth, the State Tax Commissioner, the State Corporation Commission, and its three Commissioners. Subsequently, the court dismissed the State Corporation Commission and its members, ruling that they were unnecessary parties and that complete relief could be afforded if the Commonwealth, through the State Tax Commissioner, remained as the sole party defendant. The case was submitted to the court on a written stipulation of facts and memoranda of law.
*790 The court ruled that, under the stipulated facts, McAdams' activities in Virginia were de minimis, essentially insubstantial, and inseparable from its interstate activities. Relying primarily upon Commonwealth v. Imperial Coal Co., 161 Va. 718, 167 S.E. 268 (1933), rev'd on other grounds sub nom. Virginia v. Imperial Coal Sales Co., Inc., 293 U.S. 15, 55 S.Ct. 12, 79 L.Ed. 171 (1934), the Court found that McAdams had no income from Virginia sources within the contemplation of the statute and was therefore not subject to Virginia corporate income taxes. The Commonwealth agreed not to attempt collection of the taxes and not to invoke Code § 56-304.5 against McAdams unless and until it was successful on appeal. McAdams agreed to file annual sealed income tax returns with the trial court until further order of that court. Accordingly, a declaratory judgment was entered in McAdams' favor, but no injunction was requested or entered. We granted the Commonwealth an appeal.
During the years 1973 through 1979, McAdams held all requisite certificates from the Interstate Commerce Commission to operate as an "irregular route motor common carrier transporting commodities in foreign and/or interstate commerce for compensation." During the same years, McAdams was registered with and authorized by the Virginia State Corporation Commission to transport commodities over Virginia highways in interstate, but not intrastate, commerce. McAdams had no income from intangible property located in Virginia, did not own or store property in Virginia, did not execute any contracts in Virginia, and did not have any salesmen or officers in Virginia.
The highway miles driven by McAdams' equipment in Virginia were an insubstantial part of McAdams' total miles, as indicated by the following tabulation:

 Total Intercity Percent of
 Intercity Miles Total Miles
 Miles Travelled Travelled in
Year Travelled in Va. Virginia
1974 9,096,058 249,224 2.74%
1975 8,673,136 138,727 1.60%
1976 13,408,102 259,657 1.94%
1977 20,660,618 253,716 1.23%
1978 27,126,050 435,328 1.60%
1979 35,182,928 1,103,670 3.14%

McAdams' pick-ups and deliveries in Virginia were also insubstantial in the context of its total business, as indicated by the following tabulation:

 Deliveries into Pick-ups in
 Virginia From Virginia for
 Points Outside Delivery Outside
Year The State The State
1973-1977
 (average) 35 7
1978 40 9
1979 51 1

There were no intrastate pick-ups and deliveries. The interstate pick-ups and deliveries tabulated above, which either began or ended in Virginia, constituted only 5% of the miles McAdams' vehicles travelled within the state. The remaining 95% of the miles travelled in Virginia by McAdams were "bridge miles," that is, miles driven through Virginia from a point of origin outside the state to a destination outside the state, without any pick-ups or deliveries within the state.
McAdams' income is derived from transportation charges based on miles travelled, applied to the weight of the cargo. The Commonwealth concedes the essentially interstate character of McAdams' operations, but says that the ratio of Virginia miles (including "bridge miles"), to total miles travelled in any tax year, by McAdams' vehicles, constitutes the part of McAdams' total income which is derived from "Virginia sources," and which is thus subject to Virginia income taxes. The Commonwealth would apply the following formula to determine McAdams' tax liability:
 Miles in Virginia McAdams Net Virginia
 _________________ × × .06 =
 Miles Everywhere Income (the tax Income Tax
 rate)
*791 Code § 58-151.03(c) provides in pertinent part: "[a] tax ... is hereby annually imposed on the Virginia taxable income ... of every foreign corporation having income from Virginia sources; ..." Code § 58-151.032 provides that Virginia taxable income is the same as federal taxable income, subject to certain adjustments. Code § 58-151.078 requires that foreign corporations "having income from Virginia sources" file annual Virginia corporate income tax returns with the Department. Code § 58-151.02(g) defines "income ... from Virginia sources" to include:
(1) Items of income ... attributable to
(i) The ownership of any interest in real or tangible personal property in this State; or
(ii) a business, trade, profession or occupation carried on in this State.
(2) Income from intangible personal property ... to the extent that such income is from property employed by the taxpayer in a business, trade, profession, or occupation carried on in this State.
Commonwealth v. Imperial Coal Co., 161 Va. 718, 167 S.E. 268 (1933), involved an attack upon § 52 of the Tax Code of 1930 which provided: "Every domestic corporation... doing business in this State... shall pay ... a tax ... upon the entire net income ... of such corporation, derived from business done, property located or sources in this State ...." We then held that the tax was only authorized where two essential elements were shown: (1) doing business in this State; and (2) net income derived from business, property, or sources in this State. Imperial Coal, 161 Va. at 723, 167 S.E. at 269.
Applying these principles to the corporation then under consideration, we held that it did business in Virginia only incidental to, and as an inseparable part of, its interstate business. Because our earlier cases had held that business in Virginia, to be reached by state taxation, must be "substantial in its essence" and such as "may reasonably be separated from its interstate commerce," we held that Imperial Code failed to meet the "doing business in this State" test, and that it, therefore, was not subject to Virginia income taxes. Id. at 724, 167 S.E. at 269-70.
The Commonwealth also points out that, having decided Imperial Coal on the first essential predicate for taxation, "doing business," we did not reach the second predicate, "income from Virginia sources." The Commonwealth argues that the "doing business" predicate has been deleted from the tax law since Imperial Coal was decided, and that now only the "income from Virginia sources" predicate remains. Therefore, the Commonwealth contends, Imperial Coal, upon which the trial court based its ruling, is inapposite.
McAdams argues that the only provision of the present Virginia tax law which could apply to it is that which defines "income from Virginia sources" as "income ... attributable to ... a business, trade ... or occupation carried on in this State." Code § 58-151.02(g). Therefore, McAdams says, there has, in reality, been no change in the operative predicate for taxation since Imperial Coal was decided. It argues that "doing business in this State" differs little from "business carried on in this State." Imperial Coal controls, says McAdams, and must be overruled if the Commonwealth is to prevail.
We do not agree. The "doing business" test, which governed Imperial Coal, was based upon a term of art heavily freighted with meaning, derived from countless decided cases. It furnished a useful shield against any infringement by state taxation upon interstate commerce, which was then considered to be entirely immune from most burdens imposed by local taxation.
This sacrosanct view of the Commerce Clause of the Federal Constitution was materially altered by the Supreme Court in Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959). There, the Court held constitutional a general state net income tax upon revenues derived from interstate commerce, which apportioned to the state that part of the taxpayer's interstate business fairly attributable to operations within the state.
*792 In the wake of Northwestern, the General Assembly moved promptly to amend the Virginia tax laws by deleting the "doing business" test entirely. In 1960, the statutory scheme was amended to rely on the "income from Virginia sources" test as the sole predicate for taxation. Acts 1960, c. 442.
The "income from Virginia sources" test serves to require a sufficient nexus between the taxing state and the taxpayer's interstate business to pass constitutional scrutiny under the "traditional notions of fair play and substantial justice" standard of International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The requirements of such a nexus are a far cry from the nearly total immunity from state taxation which interstate commerce formerly enjoyed. The requisite nexus may be shown by the fact that the foreign taxpayer enjoys some benefits from the taxing state. National Geographic Society v. California, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977). It is unnecessary to quantify the value of the benefits conferred by the taxing state. Standard Pressed Steel Co. v. Washington, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975). The taxpayer's use of the Virginia highway system, enjoyment of police protection, and like benefits, are sufficient to furnish the requisite nexus for taxation. See Miller Bros. Co. v. Maryland, 347 U.S. 340, 345, 74 S.Ct. 535, 539, 98 L.Ed. 744 (1954).
In Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), the Supreme Court struck down as an unconstitutional burden upon interstate commerce a Connecticut tax on the "privilege of carrying on or doing business within the state" as applied to an interstate trucking firm, even though the tax was fairly apportioned to interstate activities carried on in, or through, Connecticut. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), however, overruled Spector. Complete Auto held that a state tax constitutionally may be imposed on business conducted exclusively in interstate commerce, and that interstate business may bear a direct and fair share of the burden of state taxation. The prerequisites for such taxation are four: (1) the activity taxed must have a sufficient nexus to the state, (2) the tax must not discriminate against interstate commerce, (3) the tax must be fairly apportioned, and (4) the tax must be fairly related to services provided by the state. Id., 430 U.S. at 287, 97 S.Ct. at 1083.
Imperial Coal, as we have seen, has been rendered inapposite by later legislative changes in the Virginia tax laws. Evolving principles of Federalism have made it clear that the present Virginia income tax laws, as applied to interstate commerce, are not only constitutional, but are also a fair and reasonable recompense for the services and benefits provided to interstate carriers by the taxpayers of Virginia. The burden of proving that the statutory scheme of taxation fails to meet the prerequisite requirements of Complete Auto, supra, rests upon the taxpayer. See Moorman Mfg. Co. v. Bair, 437 U.S. 267, 275, 98 S.Ct. 2340, 2345, 57 L.Ed.2d 197 (1978). McAdams has carried no such burden here.
In order to conform to the Due Process requirements of the Fourteenth Amendment to the Federal Constitution, the General Assembly, in 1977, added a de minimis provision to the taxation scheme, Code § 58-151.050. Acts 1977, c. 658. It excludes carriers which travel less than 50,000 miles annually through Virginia or which make fewer than twelve round trips annually into the state from income tax liability. The evidence shows that McAdams' use of Virginia highways substantially exceeds these minima.
Finding that the declaratory judgment was based upon erroneous principles, we will reverse it and remand the case for the entry of a declaratory judgment below, not inconsistent with this opinion, requiring McAdams to file its Virginia income tax returns in the manner prescribed by law.
Reversed and remanded.