# Richmond.

## Thornhill Wagon Company v. Commonwealth of Virginia and the County of Campbell.

### January 14, 1926.

1. Taxation—*Correction of Erroneous Assessment—Jurisdiction—Auditor and Commonwealth as Parties.*—In the instant case, a proceeding for the correction of alleged erroneous assessment of taxes, the Commonwealth, by the Attorney-General, asked that the writ of error granted plaintiff be quashed on the ground that the Commonwealth was not a party to the proceedings in the lower court, and had not consented to be sued in the Circuit Court of Campbell county and could be sued only in the Circuit Court of the city of Richmond, and on the further ground that the Auditor of Public Accounts was not made a party defendant. The proceeding was conducted strictly in accordance with provisions of section 2385 of the Code of 1919.

   *Held:* That the writ of error would not be quashed on this ground.

2. Taxation—*Proceedings to Correct Erroneous Assessment—Auditor and Commonwealth as Parties.*—In a proceeding to correct an erroneous assessment of taxes under sections 2385-2388 of the Code of 1919, unless the Auditor deems it proper to intervene under section 2391, neither he nor the Commonwealth is a necessary party, by name, since the interests of the Commonwealth, as well as the county, are represented and defended by the attorney for the Commonwealth of the county, in the circuit court, and in the Supreme Court of Appeals by the Attorney-General or the attorney for the State Tax Board.

3. Appeal and Error—*Proceedings to Correct Erroneous Assessment—Commonwealth as Party Defendant.*—Where the taxpayer, in proceedings to correct an erroneous assessment of taxes, secures a writ of error and the Attorney-General or attorney for the State Tax Board appears in defense of the interests of the Commonwealth in the Supreme Court of Appeals, it is immaterial whether or not the Commonwealth be named as a party defendant in the appellate court.

4. Taxation—*Proceedings for the Correction of Erroneous Assessment—Jurisdiction of Circuit Court.*—In view of the language of sections 2385-2387 of the Code of 1919, providing for the correction of erroneous assessments, the Commonwealth has consented that the circuit court of the county in which the commissioner of revenue qualified may take jurisdiction of and determine the rights of the Commonwealth in all cases arising thereunder.

5. TAXATION—*Correction of Erroneous Assessments—Sections 2385-2388 Liberally Construed.*—Sections 2385-2388 of the Code of 1919, providing for the correction of erroneous assessments of taxes, are remedial and are to be given a liberal construction.

6. TAXATION—*Proceedings to Correct Erroneous Assessment—Auditor as Party—Code of 1919, Section 2579.*—Code of 1919, section 2579, which provides that "in every *such* case the Auditor shall be a defendant," is found in chapter 103 of the Code which prescribes the mode of recovering claims against the Commonwealth, generally, and has no application to motions under section 2385 to correct erroneous assessments of property for taxation.

7. TAXATION—*Examiner of Records—Commissioner of Revenue—Constitutional Law—Power of Legislature to Create Office of Examiner.*—Under the plain language of section 110 of article 7 of the Constitution of 1902, it is clear that the legislature has full power and authority to define the duties of the commissioners of the revenue, and, in its discretion, to create the office of examiner of records and empower the examiners to review the work of the commissioners, revalue the property assessed by them, assess omitted property and require the commissioners to enter such revaluations and the assessments of omitted property on the proper forms or books and extend the taxes and levies thereon.

8. TAXATION—*Examiners of Records—Constitutionality of Acts of 1924, Page 572.*—The act of 1924, page 572, in regard to examiners of records, is constitutional.

9. STATUTES—*Retrospective Law—Power of Legislature—Construction Prospective.*—The legislature may enact retrospective laws, but all legislation is presumed to be prospective in its operation. A statute should never be construed to be retroactive, except where it clearly appears from the language used that such was the intention and purpose of the legislature.

10. TAXATION—*Examiners of Records—Construction of Act of 1924, Page 572—Revaluation of Assessments.*—There is nothing in the act of 1924, page 572, in regard to examiners of records, to warrant a retrospective construction of that act, and therefore an examiner of records could not look to that statute for authority to revalue assessments made by a commissioner of revenue in the years of 1922, 1923, but the Commonwealth and a county are not forced to rely upon that statute for authority whereby the examiner of records could revalue assessments made by the commissioner of revenue during the years of 1922-1924, as such authority is conferred on the examiner of records by act of 1913, page 432 (Code of 1919, section 2332).

11. TAXATION—*Examiner of Records—Listing Omitted Property for Taxation.*—Under the act approved March 15, 1918 (Acts 1918, p. 432), which appears in part as section 2332 of the Code of 1919, the examiner of records was vested with power to ascertain and required, where

ascertained that any personal property had "not been assessed for any year of the three years next preceding that in which such ascertainment was made," or that such property had "been assessed at less than the law required, for any one or more of such years," to list such property and assess the same. Code of 1919, section 2333, requires the Auditor of Public Accounts to furnish the commissioners of the revenue the forms upon which omitted taxes on persons, tangible and intangible personal property, money, and incomes shall be assessed.

12. TAXATION—*Examiner of Records—Proceedings to Correct Erroneous Assessments—Presumptions and Burdens of Proof.*—The assessment made by the examiner of records is presumed to be correct and the burden is upon the applicant to show that his property is assessed above its *fair market value.*

13. TAXATION—*Market Value—Fair Market Value.*—The term market value, is not synonymous with intrinsic value—one meaning the actual price at which the commodity is commonly sold, and the other its true inherent value. The fair market value of property is the price it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it.

14. TAXATION—*Fair Market Value of Capital of Industrial Company—Entries on Books.*—The entries on the books of an industrial company are not conclusive upon the commissioner of the revenue, examiner of records, or other assessing authority, as to the fair market value of the items of property which are to be assessed as capital. Where the books are properly and accurately kept, and there is no evidence of fraud or mistake, they are presumed to reflect such value; but this presumption may be rebutted by showing that the fair market value of the assets of the company, on account of market fluctuations or other causes, is less than the value at which they are carried on the company's books.

15. TAXATION—*Fair Market Value of Capital of Industrial Company—Entries on Books—Case at Bar.*—In the instant case, a proceeding for the correction of erroneous assessments, the examiner of records, convinced that the capital of the applicant (a corporation), was not assessed by the commissioner of revenue as required by law, ascertained its fair market value to be the value as shown upon the books of the company and assessed the same accordingly. The examiner did not testify and there was no evidence to sustain his assessment except the books. Witnesses for the applicant, its secretary and treasurer and the commissioner of revenue who made the assessment, testified in support of the commissioner's assessments. They were uncontradicted.

*Held:* That the evidence sustained the assessments made by the commissioner of revenue and that the court erred in holding that the

book value reported by the examiner of records reflected the fair market value of the property.

16. Taxation—*Proceeding to Correct Erroneous Assessments—Appeal and Error—Cross Error.*—On appeal by a taxpayer from an order denying relief in a proceeding to correct assessments by the examiner of records, cross error was assigned to the action of the court in correcting the assessments made by the examiner of records at the request of the examiner. Counsel for the State Tax Board took no exception to the order which was entered making the correction. Having failed to do so, he could not make his objection for the first time in the appellate court, besides having decided that the petitioner should be relieved of all increase in assessments made by the examiner of records, this assignment of error was necessarily without merit.

Error to a judgment of the Circuit Court of Campbell county, in a proceeding to correct erroneous assessments. Judgment for the Commonwealth. Petitioner assigns error.

*Reversed and final judgment.*

The opinion states the case.

*Harrison, Long & Williams* and *Strode & Edmunds,* for the plaintiff in error.

*E. Warren Wall, W. M. Murrell* and *John R. Saunders, Attorney General,* for the defendant in error.

West, J., delivered the opinion of the court.

Thornhill Wagon Company, a corporation, made application under four notices of motion for the correction of alleged erroneous assessments of taxes and levies upon the capital employed in business for the years 1922, 1923 and 1924.

Notice No. 1 involves local levies upon omitted capital employed in business, assessed for the year 1922 at $188,604.00, and for the year 1923 at $118,686.00.

Notice No. 2 involves State taxes upon capital employed in business, assessed for the year 1924 at $753,362.00.

Notice No. 3 involves State taxes upon omitted capital employed in business, assessed for the year 1922 at $188,604, and for the year 1923 at $118,686.

Notice No. 4 involves local levies upon capital employed in business, assessed for the year 1924 at $753,362.

The four motions were heard together.

Before the date of the hearing on these motions the examiner of records appeared in court and on his motion, after stating that he had erroneously increased the assessment for 1924 by including therein $130,000 which represented borrowed money, the court entered an order correcting the assessment of $753,362 to the extent of $130,000.

In 1922, 1923 and 1924, Thornhill Wagon Company made its returns to the commissioner of the revenue of Campbell county of the amount of capital employed in business for each of the said years.

Capital, as defined in paragraph second, section 8 of the Tax Bill, Acts of 1922, page 553, includes:

"(1) The inventory of stock on hand, which shall include all raw material for use of the business, whether at the place of business, in storage, or elsewhere in the State;

"(2) The excess of bills and accounts receivable over bills and accounts payable;

"(3) All machinery and tools not taxed as real estate;

"(4) Money on hand and on deposit;

"(5) All other property of any kind whatsoever, including all choses in action, equities, demands and claims."

In addition to the interrogatories which were an-

swered, sworn to and returned, the company filed with
the commissioner each year a statement showing the
book value of the capital employed in its business.
The commissioner, each year, after going over the
facts set forth in the return, including the statement
showing the book values, and making inquiry as to
the market value of the property included in each item
thereof, assessed the same at what he considered to be
its fair market value.

Taking the book values as a basis he made such
deductions as, in his judgment, were necessary to re-
duce book value to fair market value.

His deductions for the year 1922 appear in the
following statement:

### JANUARY 1, 1922.

### *Deductions.*

| | | | |
|---|---|---|---|
| Excess on bills and accounts receivable | $267,202.16 | | |
| Less reserve for bad debts | 30,000.00 | | |
| | $237,202.16 | 25% | $ 59,300.54 |
| Office fixtures and Ford machines | $ 7,551.15 | 25% | 1,887.78 |
| Inventory | 382,248.52 | 33% | 127,416.17 |
| | | | $188,604.49 |
| Total gross capital | | | 660,501.27 |
| Less deductions | $188,604.49 | | |
| Less reserve for bad debts | 30,000.00 | | |
| | | | 218,604.49 |
| Fair market value | | | $441,896.78 |

Excess bills and accounts re-
ceived (as shown above)........$237,202.16
Reserve for bad debts................. 30,000.00
Office fixtures and Ford ma-
chines............................................. 7,551.15
Inventory........................................ 382,248.52
Cash on hand................................. 3,499.44

Total gross capital..................$660,501.27

The "reserve for bad debts" appeared in the book statement and is not contested.

In 1924 the examiner of records reviewed the work of the commissioner for 1922, 1923 and 1924, and adopting the book value as the fair market value of the capital employed in business, reported to the commissioner omitted capital for the year 1922 amounting to $188,604.49, and omitted capital for the year 1923 amounting to $118,686.00. The commissioner entered these assessments upon his books, and under the direction of the examiner of records entered the total assessment of capital employed in business for the year 1924 at $753,362, which was later reduced by the examiner's admitted error of $130,000; and petitioner now claims it should have been further reduced so as to bring the assessment down to $499,666.29.

The court, holding that the value of the capital as shown by the books of the company was its fair market value and was conclusive on the commissioner, regardless of his opinion of the market value thereof, sustained the assessment of the examiner of records, denied the relief applied for under all four of the motions and applications, and dismissed the same at the cost of the applicant. To that judgment this writ of error was allowed.

[1, 2] We are met at the threshold with a motion on the part of the Commonwealth, by her Attorney-General, to quash the writ of error in this case, on the ground that the Commonwealth of Virginia was not a party to the proceedings in the lower court, ha not consented to be sued in the Circuit Court of Campbell county, and can be sued only in the Circuit Court of the city of Richmond, and on the further ground that the Auditor of Public Accounts is not made a party defendant.

Legal service of the notice in these cases was duly acknowledged by E. W. Jones, commissioner of the revenue, J. W. Wall, examiner of records, and W. M. Murrell, attorney for the Commonwealth for Campbell county, all of whom are parties defendant. The proceeding has been conducted strictly in accordance with the provisions of section 2385, Code of 1919, which prescribes the method of securing redress against an erroneous assessment of taxes. The order of the court shows that the motions were defended by W. M. Murrell, attorney for the Commonwealth for Campbell county, and E. Warren Wall, counsel for the State Tax Commissioner, and that E. W. Jones, commissioner of the revenue, who made the assessment, was examined as a witness touching all the applications. Under Code, sections 2386, 2387 and 2388, the court is authorized to correct the assessment if erroneous and the Auditor of Public Accounts is required to refund to the taxpayer the amount he has erroneously paid into the treasury. Only where the decision of the lower court is against the Commonwealth, and the Auditor of Public Accounts is of opinion, from the statement of facts and other evidence, that the order granting redress is erroneous, may he file a petition in the name of the Commonwealth for a

rehearing of the application. If upon the rehearing the judgment of the court is against the Commonwealth, the Auditor of Public Accounts may take an appeal to the Supreme Court of Appeals. Code, section 2391. Unless the Auditor deems it proper to intervene under section 2391, neither he nor the Commonwealth is a necessary party, by name, to a proceeding under section 2385, since the interests of the Commonwealth, as well as the county, are represented and defended by the attorney for the Commonwealth of the county in the circuit court, and in this court by the Attorney-General or the attorney for the State Tax Board.

[3] Where the taxpayer secures the writ of error and the Attorney-General or attorney for the State Tax Board appears in defense of the interests of the Commonwealth in this court, it is immaterial whether or not the Commonwealth be named as a party defendant in the appellate court.

[4] By the enactment of sections 2385, 2386 and 2387 the Commonwealth, in effect, says to the taxpayer who feels aggrieved by an assessment of his property: "If you will proceed in accordance with the provisions of these sections and show that an error has been made against you, it shall be corrected even though I am not impleaded by name in either court." In view of the language used in these statutes, we are unwilling to hold that the Commonwealth has not consented that the circuit court of the county in which the commissioner qualified may take jurisdiction of and determine its rights in all cases arising thereunder.

[5] In *Commonwealth* v. *Smallwood Memorial Inst.*, 124 Va. 144, 97 S. E. 805, it was held that these statutes are remedial and are to be given a liberal construction "with the view of advancing the remedy sought to b

applied in accordance with the true intent and purpose of the legislature," to "provide an expeditious and inexpensive remedy for relief against taxes which have been erroneously assessed or collected." This section provides a simple remedy by motion by which the Commonwealth and the taxpayer may have all questions of alleged errors in the assessment of his property fairly and equitably adjusted in the circuit court of the county by whose commissioner the assessment was made.

As was said by the court in *Johnson* v. *Hampton Institute*, 105 Va. 326, 54 S. E. 33: "We think the remedy afforded by this statute, which provides for bringing both the citizen and the Commonwealth before the court, is ample and complete to meet the exigencies of the case presented in the pleadings." At page 325 (54 S. E. 33) the court also says: "We are indisposed to hold that the remedy of a citizen against the levy of a tax which is claimed to have been, for any cause, improperly assessed and levied, is to be asserted only in the Circuit Court of the city of Richmond, as that would impose a serious inconvenience and burden upon a person deeming himself aggrieved."

[6] Code, section 2579, which provides that "in every *such* case the Auditor shall be a defendant, is found in chapter 103 of the Code which prescribes the mode of recovering claims against the Commonwealth, generally, and has no application to motions under section 2385 to correct erroneous assessments of property for taxation.

The motion to quash is without merit and will be overruled.

The petitioner contends:

1. That the act of 1924 is not retroactive and gave the examiner of records no power to review and re-

value the assessments made by the commissioner for the years 1922 and 1923;

2. That the act of 1924 did not become effective until June 18, 1924, and gave the examiner no power to revalue the 1924 assessment already made by the commissioner;

. 3. That the act of 1924, so far as it empowered the examiner to impose his opinion of value upon the commissioner of revenue, is unconstitutional;

4. That upon the evidence adduced the court should have found the assessments made by the commissioner to be the fair market value of the capital employed.

The first three contentions will be considered together.

[7] Section 110 of article VII of the Virginia Constitution reads as follows:

"There shall be elected by the qualified voters of each county, for four years, commissioners of the revenue for each county, the number, duties and compensation of whom shall be prescribed by law."

Under this plain language of the Constitution it is clear that the legislature has full power and authority to define the duties of the commissioners of the revenue, and, in its discretion, to create the office of examiner of records and empower the examiners to review the work of the commissioners, revalue the property assessed by them, assess omitted property and require the commissioners to enter such revaluations and the assessments of omitted property on the proper forms or books and extend the taxes and levies thereon.

[8, 9] The contention that the act approved March 20, 1924 (Acts 1924, p. 572), is unconstitutional is without merit.

The legislature may enact retrospective laws, but all legislation is presumed to be prospective in its opera-

tion. A statute should never be construed to be retroactive, except where it clearly appears from the language used that such was the intention and purpose of the legislature. *Commonwealth* v. *Lorillard Co.*, 126 Va. 259, 118 S. E. 323; *Commonwealth* v. *P. Lorillard Co.*, 129 Va. 74, 105 S. E. 683; *Commonwealth* v. *Wellford*, 114 Va. 372, 76 S. E. 917, 44 L. R. A. (N. S.) 419.

[10, 11] We find nothing in the act of March 20, 1924, *supra*, to warrant such a construction.

It follows that the examiner of records could not look to this statute for authority to revalue assessments made by the commissioner in the years 1922 and 1923.

The Commonwealth and the county are not forced, however, to rely upon this statute for authority whereby the examiner of records could revalue assessments made by the commissioner for each of the three years involved in the instant case. Under the act approved March 15, 1918 (Acts 1918, p. 432), which appears in part as section 2332 of the Code of 1919, the examiner of records was vested with power to ascertain and required, where ascertained that any personal property had "not been assessed for any year of the three years next preceding that in which such ascertainment was made," or that such property had "been assessed at less than the law required, for any one or more of such years," to list such property and assess the same. Code, section 2333, requires the Auditor of Public Accounts to furnish the commissioners of the revenue the forms upon which omitted taxes on persons, tangible and intangible personal property, money, and incomes shall be assessed.

Being satisfied that the examiner of records was vested with authority to make the assessments and that the commissioner properly extended the taxes and

levies thereon, we come now to the remaining contention of the petition, namely, that the assessments made by the examiner were erroneous and that the assessments made by the commissioner in the first instance were the fair market value of the capital employed.

[12] The assessment made by the examiner of records is presumed to be correct and the burden is upon the applicant to show that his property is assessed above its *fair market value.*

In *Union Tanning Co.* v. *Commonwealth*, 123 Va. 610, 96 S. E. 780, the court said: "The burden of proof is upon an applicant for the correction of an alleged erroneous assessment of taxes under Code of 1904, section 568. After the making of the assessment and the jurisdiction of the assessing officer who made it has been proved, the burden is not on the State or local subdivision to show by affirmative proof the existence of the specific item embraced in the assessment and the fair cash value thereof."

[13] In *Chicago R. I. & P. R. Co.* v. *Clements*, 53 Tex. Civ. App. 143, 115 S. W. 664, the court defines market value as follows: "The term 'market value' is not synonymous with intrinsic value—one meaning the actual price at which the commodity is commonly sold and the other its true inherent value."

In *Seaboard Railway Co.* v. *Chamblin*, 108 Va. 45, 60 S. E. 729, 15 Ann. Cas. 825, the court said: "The fair market value of property is the price it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it."

[14] The entries on the books of an industrial company are not conclusive upon the commissioner of the revenue, examiner of records, or other assessing author-

ity, as to the fair market value of the items of property which are to be assessed as capital. Where the books are properly and accurately kept and there is no evidence of fraud or mistake, they are presumed to reflect such value; but this presumption may be rebutted by showing that the fair market value of the assets of the company, on account of market fluctuations or other causes, is less than the value at which they are carried on the company's books.

This court, speaking through Judge Campbell in the recent case of *Commonwealth* v. *Columbian Paper Co.*, 143 Va. 332, 130 S. E. 421, held that book value was not the unbending test of fair market value, and affirmed the judgment of the lower court in making certain deductions from the book value in order to ascertain the fair market value of capital employed in business.

[15] The examiner of records, convinced that the capital of the company was not assessed by the commissioner as required by law, ascertained its fair market value to be the value as shown upon the books of the company and assessed the same accordingly. The examiner of records did not testify as a witness in the case and there is no evidence to sustain his assessments, except the statements from the books of the company.

The only witnesses examined were A. F. Thomas, secretary-treasurer of the applicant, and E. W. Jones, commissioner of the revenue, who made the assessments. Commissioner Jones, in making the original assessments, took the statement from the books of the company as a basis. After examining the statement and inventory furnished him, he interviewed and secured a statement from the secretary-treasurer of the company as to the probable market value of the items to be assessed, and reached the conclusion that

the fair market value of the property hereafter named would be ascertained by deducting from the book values, for each year, the following percentages:

For 1922, from excess bills and accounts receivable, and office fixtures and Ford machines, twenty-five per cent; and from property included in the inventory, thirty-three per cent.

For 1923, from office fixtures and automobile and inventory, twenty-five per cent, and from excess bills and accounts, sixteen and two-thirds per cent.

For 1924, from office fixtures and automobiles and from inventory, twenty-five per cent; and from excess bills and accounts receivable, sixteen and two-thirds per cent.

Thomas testified without contradiction that the statements and inventories showed the cost price of the articles named therein, or the price at which the same could be replaced, if that was lower than the cost price; but did not show the market value of such articles which could be realized by a sale of the same; that the fair market value of the property was reflected in the values ascertained by Commissioner Jones, and not in the book values as assessed by the examiner of records; that if the property were put upon the market it would not, in his judgment, bring more than the values placed upon it by the commissioner; and that he was willing to sell some accounts receivable at a discount of seventy-five per cent.

Our conclusion is that the evidence sustains the assessments made by the commissioner of the revenue, and that the court erred in holding that the book values reported by the examiner of records reflected the fair market values of the property. The judgment will be reversed and judgment will be entered here relieving the Thornhill Wagon Company of all taxes and levies

assessed against it for the years 1922, 1923 and 1924 on capital employed in business, in excess of the amounts assessed against it by the commissioner of the revenue, independent of the examiner.

[16] The cross-error assigned is to the action of the court in correcting the assessment made by the examiner of records, to the extent of $130,000, at his request.

Counsel for the State Tax Board took no exception to the order which was entered making this correction. Having failed to do so, he cannot make his objection for the first time in this court. *Columbian Paper Company* v. *Commonwealth, supra.* Besides, having decided that petitioner should be relieved of all increase in assessments made by the examiner of records, this assignment of error is necessarily without merit.

*Reversed and final judgment.*