# Richmond

## COMMONWEALTH OF VIRGINIA V. IMPERIAL COAL SALES COMPANY, INC.

January 16, 1936.*

Present, All the Justices.

The opinion states the case.

*Abram P. Staples, Attorney-General, W. W. Martin, Assistant Attorney-General,* and *Henry R. Miller, Jr.,* for the Commonwealth.

*Caskie & Frost* and *F. P. Christian, Jr.,* for the defendant in error.

*Rehearing denied March 12, 1936.

CHINN, J., delivered the opinion of the court.

This is the third hearing of this case in this court. It was first heard on the original writ of error, and the second time on rehearing. (*Commonwealth of Virginia* v. *Imperial Coal Sales Co., Inc.*), 161 Va. 718, 736, 167 S. E. 268, 172 S. E. 927.

As appears from the original opinion, the defendant in error sought exoneration from taxes assessed on its capital and income by the Department of Taxation of Virginia on the ground that the assessments were unauthorized by the State law, and also on the ground that they were in violation of the Commerce Clause (Article 1, sec. 8, cl. 3) and the Fourteenth Amendment of the Constitution of the United States. The tax on the income was held by this court to be invalid upon the ground that it was unauthorized by the State law, and the tax on the capital was held to be invalid on the ground that it is a burden upon interstate commerce and contrary to the Constitution of the United States. On the rehearing this opinion was adhered to, but on certiorari to the Supreme Court of the United States the holding of this court on the federal question was reversed, and the cause remanded to this court for further proceedings not inconsistent with that opinion. (*Virginia* v. *Imperial Coal Sales Co., Inc.*), 293 U. S. 15, 55 S. Ct. 12, 79 L. Ed. 171.

It is now contended by the defendant in error that it is not taxable on the capital under the Virginia law, and in support of its proposition, cites sections 73, 74, 76 and 427 of the Virginia Tax Code.

Section 73, Tax Code (see Code 1930, Appendix, page 2147), provides for the assessment for taxation of the capital of any trade or business of any person, firm or corporation, which is not otherwise specifically taxed or specifically exempt from taxation, and defines what shall be considered as the capital subject to such tax. It is conceded that the property assessed as capital in this case is the property of the Imperial Coal Sales Company, and

that the assessments as made are correct if said company is subject to any capital tax whatever for the years the assessments were made.

Section 74, Tax Code (see Code 1930, Appendix, page 2148), provides for the taxation of the capital of non-resident persons, partnerships, and foreign corporations doing business in this State, consisting of money, credits, and other intangible assets used exclusively in connection with the business done in this State or arising therefrom.

Section 76, Tax Code (see Code 1930, Appendix, page 2148), provides that when any person, firm, or corporation domiciled in and doing business in this State maintains a branch of such business outside of the State, no part of the capital of such person, firm or corporation which is permanently invested in such branch of its business, or arising from business originating from any such branch, shall be assessed with taxes within this State.

Section 427, Tax Code (see Code 1930, Appendix, page 2251), provides: "No income tax nor *ad valorem* taxes, State or local, shall be imposed upon the stocks, bonds, investments, capital or other intangible property heretofore or hereafter owned by corporations organized under the laws of this State for any tax year during which such corporations do, or have done, no part of their business within this State; and the mere holding of stockholders' meetings, annual or special, in this State, or the doing of any act or acts in this State now or hereafter required by the laws thereof to be done in this State, shall not be construed as doing any business in this State within the meaning of this section; * * *."

As observed, section 74 refers entirely to the taxation of the capital of non-resident corporations doing business in this State, and section 76 refers to the taxation of the capital of a resident corporation which is permanently invested in a branch maintained by said corporation outside of the State. Since the defendant in error in this instance is a domestic and not a foreign corporation, and it is not claimed that it maintains a branch of its business

outside of the State, these two sections of the Tax Code have little or no bearing upon the immediate question involved. The sole question is, therefore, whether or not the capital of the Sales Company in this instance is exempt from taxation under section 427 of the Tax Code on the ground that *no part of its business is done within this State,* within the meaning and intent of said section.

It appears from the record and from the former opinion that the defendant company is a Virginia corporation, with its principal office situated in the city of Lynchburg. Its sole business is the selling of coal in carload lots for collieries located outside of the State of Virginia, upon a *del credere* commission. It does not own any mines, and does not buy or sell coal on its own account. Its method of doing business is to take orders for coal in the form of contracts between the purchasers and the Sales Company, all of which contracts have to be approved and signed by an executive officer of the company before they become effective. All contracts so made and approved are filed in the Lynchburg office, and a copy is then sent to the colliery interested. All orders and books of account are also kept in the Lynchburg office, which office makes out and sends monthly statements to the purchasers of the coal, showing the account as payable to the company at Lynchburg. All payments for coal are actually made to the company at Lynchburg, and when collected are deposited in the Lynchburg bank to the credit of the company. All checks upon the company account are drawn in and sent from the Lynchburg office to the colliery companies. If the purchaser fails to settle by the 20th of the month the company pays the seller, and afterwards collects from the purchaser.

In view of these facts we think it would be untenable to say that the defendant corporation does no part of its business within this State. On the other hand, it seems manifest to us that, although it relates to interstate commerce, practically all of the essentials of defendant's busi-

ness, which is merely that of a sales agency, are localized and conducted in the State of Virginia.

In discussing the liability of the defendant company for the tax assessed upon its capital, the Supreme Court of the United States said (*Virginia* v. *Imperial Coal Sales Co., Inc.,* 293 U. S. 15, 55 S. Ct. 12, 13, 79 L. Ed. 171) : "The money on hand, and the bills and accounts receivable, the excess of which over bills and accounts payable was assessed, had their *situs* in Virgina. Respondent is a domestic corporation with its principal office in that State where the proceeds of its accounts receivable are collected and deposited in bank. Such credits and accounts are regarded as situated at the domicile of the creditor and that domicile establishes a basis for taxation. * * *

"Property having its *situs* within the taxing State is not exempt from a non-discriminatory property tax merely because the property is used in interstate commerce. Corporations engaged in interstate commerce should bear their proper share of the burdens of the government under whose protection they conduct their operations, and non-discriminatory taxation of their property although used in interstate commerce, as this court has frequently said, affects that commerce only incidentally and is not inconsistent with the constitutional immunity from the imposition of direct burdens."

While the court was not, of course, undertaking to pass upon the question of whether the tax is valid under the State law, the language above quoted clearly shows that in the view of that court the business of the defendant company is conducted in Virginia, and the fact that the commodity in which it deals is produced and sold to purchasers outside of Virginia, is only incidental to the real *situs* of the business itself.

To hold the defendant corporation exempt from the tax assessed on its capital under section 427 of the Tax Code merely because its business is interstate in character would not only be contrary to the manifest legislative intent, but exonerate the company from its "proper share

of the burdens of the government under whose protection it conducts its operations."

It is further contended, however, that the former opinion of this court passed upon this question adversely to the Commonwealth, and, whether right or wrong, the same is now *stare decisis,* or "the law of the case." While it is true that certain expressions used in the opinion indicate that, at the time it was handed down, this court was inclined to the view that there might be found a leaning and intent on the part of the legislature to exempt the defendant corporation from the assessment of a capital tax, it appears from the opinion itself that the decision of this court holding said tax invalid was placed solely on the ground that it is a burden upon interstate commerce, and forbidden by the Constitution of the United States, and not upon the ground that it is exempted from taxation under the statute as the Sales Company claims.

In commenting upon this phase of the opinion handed down by this court, Chief Justice Hughes, speaking for his own court (*Virginia* v. *Imperial Coal Sales Co., Inc.,* 293 U. S. 15, 55 S. Ct. 12, 79 L. Ed. 171), clearly states the scope and effect of the decision, as follows:

"But in dealing with the capital tax, the State court concluded that it was 'unnecessary to pass upon the construction of section 73 of the Tax Code under which the assessment was made.' While observing 'a strong leaning and intent on the part of the lawmakers to exclude such corporations as the Sales Company from State tax action,' the court did not put its decision upon a non-federal ground but based it explicitly upon the ground that the tax was invalid under the Federal Constitution. The court said—'we prefer to rest the decision of the validity of the capital tax here considered upon the broad proposition that it is invalid because it is a burden upon interstate commerce and forbidden by the Constitution of the United States.' As the decision was thus expressly rested, not upon the inapplicability of the State law, but upon a determination of the federal question, by which the bar

of the Federal Constitution was erected against the levy of the tax, this court has jurisdiction."

When the original opinion is scrutinized it is manifest that the question here involved was not therein decided and is, therefore, still open for the decision of this court. If it had been decided by this court that the tax was invalid under the State law, as well as under the Federal Constitution, the Supreme Court of the United States would not have taken jurisdiction.

In view of the above conclusions, the constitutionality of the tax involved having been upheld by the Supreme Court of the United States, and this court being of the opinion that the assessment complained of is valid under the State law, to that extent the judgment of the Circuit Court of the city of Lynchburg is reversed, and the cause remanded for further proceedings therein not inconsistent with this opinion.

*Reversed and remanded.*