JACOB RUPPERT *v.* COMMISSIONER OF TAXES.

(85 A2d 584)

October Term, 1951.

Present: JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ., and HUGHES, Supr. J.

Opinion Filed January 2, 1952.

84

*Lawrence & O'Brien* for the plaintiff.

*Clifton G. Parker,* Attorney General, and *Frederick G. Mehlman,* Deputy Attorney General, for the defendant.

BLACKMER, J. This proceeding originated before the commissioner of taxes under V. S. 47, § 973, to obtain a revision of taxes assessed under V. S. 47, §§ 949-951. Relief was denied, and the complainant appealed to the Washington County Court under V. S. 47, § 974. To the plaintiff's petition the defendant demurred; the demurrer was sustained; the plaintiff excepted; and the cause was passed to this Court.

The petition shows these facts. The plaintiff is a New York corporation with its principal place of business in New York City. The defendant is the commissioner of taxes of this state. The plaintiff has never qualified to do business in Vermont by obtaining a certificate of authority from the secretary of state as secretary of foreign corporations under V. S. 47, Chapter 265. It held a certificate of approval issued by the Vermont Liquor control board under

the provisions of V. S. 47, §§ 6144-6149. This certificate of approval authorized the plaintiff to sell its product, malt beverages, to holders of Vermont wholesale dealers licenses. The plaintiff had no brewery in this state, nor any employee resident here. Its only Vermont outlet was the Champlain Valley Fruit Co., Inc., a Vermont corporation. The Champlain Valley Fruit Co., Inc. was an independent wholesaler duly licensed by the liquor control board to distribute malt beverages. The wholesaler ordered by mail or telephone. Deliveries were made to it in New York City, either at the brewery platform or at railroad freight yards on straight bills of lading. The wholesaler paid the costs of transportation. It was billed from New York City, and paid by check mailed to New York City. Sales of the plaintiff's products were made through an agent resident in New York. The plaintiff kept the absolute and unqualified right to approve, disapprove and reject any and all orders produced by the agent, and further reserved the right to determine prices and credit. The sales agent, in accordance with the terms of his contract, visited the wholesaler in Vermont in connection with promotional work. The promotional work related to preserving or increasing the market for the Ruppert product in Vermont. It tied in with and was related to national and area advertising campaigns. The plaintiff advertised extensively in Vermont. We take judicial notice that such newspapers were published both here and elsewhere. The plaintiff also participated in radio programs broadcast from within and without Vermont, and also in television programs from without Vermont. The plaintiff's amended tax returns set forth that it made no sales in Vermont, paid no salaries or wages here, nor owned any real or tangible personal property in this jurisdiction. On its return for the calendar year 1947 its franchise tax was assessed at $366.83. For the calendar year 1948 the tax was assessed at $25.00, this sum being the minimum tax.

So far as material to this inquiry, V. S. 47, Chap. 44, Franchise Taxes, has these provisions. V. S. 47, § 949 (III) defines "doing business" as any transaction or transactions in the course of its business by a corporation qualified to do or doing business in this state. V. S. 47, § 949 (V) defines "franchise tax" as a tax on every domestic corporation for the privilege of exercising its franchise in this state, and on every foreign corporation for the privilege of doing business in this state, measured by or according to net income. V. S. 47, § 950 levies a franchise tax on every domestic corporation and on

every foreign corporation liable, to be measured by its net income, and further provides that each such corporation shall pay a tax of not less than $25.00 for each income year. V. S. 47, § 951 provides for the allocation of income derived from business done within and without the state. Normally such allocation is made by giving equal weight to three factors : 1. The ratio of the value of real and tangible personal property within the state to all such property; 2. the ratio of the personal service compensation paid to employees within the state to all such compensation; 3. the ratio of gross sales or charges for services within the state to all of such sales or charges.

V. S. 47, § 951 contains a further proviso that in special cases where, in the judgment of the commissioner of taxes, the application of the above three factors does not result in a fair and equitable allocation to the state, allocation shall be made in accordance with rules and regulations prescribed by the commissioner. This provision of the statute was not invoked in the present case, and we dismiss it with the observation that it is of very dubious constitutional validity. 16 CJS, Constitutional Law, § 133, p. 339, n.6.

The statutes just summarized have been held to impose not a direct tax on allocated net income, but an annual tax for the privilege of doing business within this state. *Union Twist Drill Co.* v. *Harvey,* 113 Vt 493, 508, 37 A2d 389.

It has been seen from the facts set forth that the plaintiff had no real or tangible personal property in the state; it paid no personal service compensation to employees within the state; and it made no sales or charges for services within the state. When the measure for allocation of income in V. S. 47, § 951 is applied, there is no net income by which to measure the tax imposed by V. S. 47, § 950. To the extent that the commissioner of taxes endeavored to assess a tax in excess of the minimum his action was erroneous. Whether the facts justify the imposition of the minimum tax remains for consideration.

Mention is now made of such parts of those statutes and regulations of the liquor control board which are pertinent to the consideration of certificates of approval. The liquor control board may grant to a manufacturer of malt beverages, not otherwise licensed, a certificate of approval authorizing it to sell such beverages to holders of wholesalers' licenses. V. S. 47, § 6144. The applicant must agree to comply with the regulations of the liquor control board, and agree to file a monthly report under oath with the commissioner of taxes

showing the quantity of malt beverages sold or delivered to each Vermont wholesaler, and also such further information as the liquor control board or commissioner of taxes deems necessary. V. S. 47, § 6145; Regulation #25. The certificate is renewable annually on application and payment of the fee. V. S. 47, § 6146. It may be revoked for failure to comply with any regulation of the board, or for failure to furnish the required reports. V. S. 47, § 6147. No wholesaler shall purchase or import any malt beverages unless the seller holds a valid certificate of approval. V. S. 47, § 6148. A person violating a provision of the statutes is subject to fine and imprisonment, and shall forfeit any liquor license held by him. V. S. 47, § 6149. The holder of a certificate of approval shall file with the liquor control board a list of wholesalers authorized to distribute its products and designating the territory assigned to each distributor within the state; shall notify the liquor control board of any change in distributors or territories; and in case of a change of distributors shall make provision for taking over the stock on hand. Regulation #26.

The plaintiff urges that the due process clause of the Fourteenth Amendment of the constitution of the United States of America denies to the State of Vermont the power to levy the tax sought to be imposed. The reason assigned is that the plaintiff is not doing business in Vermont.

What constitutes "doing business" is important for three different purposes: (1) to determine jurisdiction for service of process; (2) to determine jurisdiction to tax; (3) to determine whether or not the corporation must "domesticate." Restatement, Conflict of Laws, § 167; 16 U. Chi. L. Rev. 523, 525, 526. A state may have jurisdiction over a foreign corporation for service of process, but not for taxation. *Thurman* v. *C. M. & St. P. R. Co.,* 254 Mass 569, 151 NE 63, 46 ALR 563, 658. A broader meaning is sometimes attributed to "doing business" in a tax statute, the fact that the interests or activities of the corporation receive the protection of local laws being of weight. 23 Am Jur, Foreign Corporations § 362; *Palmetto Fire Ins. Co.* v. *Conn,* 272 US 295, 47 S Ct 88, 71 L Ed 243. The fact that none of several acts or transactions subject a foreign corporation to a state tax is not conclusive. 23 Am Jur, Foreign Corporations, § 361 p. 338, n. 5. Each case stands on its own facts and circumstances. 23 Am Jur, Foreign Corporations, § 360, n. 8.

The authorities on the subject of "doing business in the state"

are multitudinous. In order to show on which side of the dividing line a case falls, extensive analysis of the cases would be of little avail. The dividing line in many instances is very tenuous. *State* v. *Winsted,* 66 Idaho 504, 162 P2d 894, 897. No case squarely in point has been given to us; we believe there is no such.

The plaintiff says that the certificate of approval from the liquor control board did not authorize it to do business in Vermont, but that such authority could be obtained only from the commissioner of foreign corporations under the provisions of V. S. 47, Chapter 265. This is not so. V. S. 47, § 5981 expressly leaves it open for foreign corporations to obtain authority to do business in this state by means other than a certificate of authority from the commissioner of foreign corporations. The certificate of approval fairly falls within the exception made in V. S. 47, § 5981. It authorized the plaintiff to sell its malt beverages to local wholesalers by sales consummated within or without this state. This was a limited authority to act as a corporation in Vermont. That this plaintiff chose to sell only without the state did not negative its authority to sell within. The fact that it qualified to do business in this state is a circumstance to be taken into consideration. 23 Am Jur, Foreign Corporations, § 361, p. 338, n. 8, 9.

It has appeared that the sales agent of the plaintiff visited Vermont to promote the sales of the plaintiff's product. It is fair to imply from the context of the appeal that these visits were continuous and systematic. Also the rule is that one claiming immunity from local taxation has the burden of establishing his exemption. *Norton* v. *Department of Revenue,* 340 US 534, 71 S Ct 377, 95 L Ed 517. This promotional activity was no local activity authorized by the certificate of approval. But V. S. 47, § 949 includes in its definition of doing business acts of a foreign corporation whether it has qualified to do them here or not. A franchise tax is held in *State* v. *Clement National Bank,* 84 Vt 167, 179, 78 A 944, to be a tax upon the privilege of doing business under a corporate organization. We hold that under V. S. 47, § 950, a foreign corporation doing unauthorized acts in Vermont, unmolested by injunction proceedings under V. S. 47, § 6008, is exercising the privilege of doing business under corporate organization. 23 Am Jur § 333, n 3. The promotional activities of the plaintiff's agent are for consideration.

It is said by the plaintiff that the 21st amendment to the constitution of the United States of America has no application to

the case. We do not agree. The 21st amendment confers upon the state the power to forbid all importations which do not comply with the conditions which the state prescribes. *State Board of Equalization* v. *Young's Market Co.,* 299 US 59, 57 S Ct 77, 81 L Ed 38; Anno. 138 ALR 1150, 1151. It relieves the states of the limitations of the commerce clause on their powers over the transportation or importation of intoxicating liquor. *Carter* v. *Virginia,* 321 US 131, 64 S Ct 464, 88 L Ed 605; *Indianapolis Brewing Co.* v. *Liquor Control Commission,* 305 US 391, 59 S Ct 254, 83 L Ed 243; *Finch & Co.* v. *McKittrick,* 305 US 395, 59 S Ct 256, 83 L Ed 246. In order for its product to be marketed in Vermont by others and at all, it was necessary for the plaintiff to hold a valid certificate of approval. This differentiates the present case, since the 21st amendment has placed liquor in a category different from that of other articles of commerce. *Carter* v. *Virginia,* 321 US 131, 138, 64 S Ct 464, 88 L Ed 605, 612.

This court has recently noted that *International Shoe Co.* v. *State of Washington,* 326 US 310, 66 S Ct 154, 90 L Ed 95, expressly discarded the concepts of "implied consent," "presence" and "doing business." *Smyth* v. *Twin State Improvement Corp.,* 116 Vt 569, 572, 80 A2d 664. The International Shoe case deals with both jurisdiction for purposes of suit and jurisdiction to tax, chiefly the former. It is to be expected that the United States Supreme Court will extend the principles of the International Shoe case to cases involving taxation when the occasion requires. In support of this statement we quote the language of the International Shoe case: "To say that the corporation is so far 'present' there (i. e. in a foreign state) as to satisfy due process requirements for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts deem sufficient to satisfy the demands of due process." Another apt quotation from the same case, is: "The activities which establish its presence subject it alike to taxation by the state and to suit to recover the tax." The language of the Court does not in any way suggest that the holding is to be limited to actions brought by a state to recover unemployment compensation contributions. 16 U. Chi. L. Rev. 523, 525. An examination of the later cases citing the International Shoe case discloses nothing repugnant to the use we make of it. We express again our expectation that the

broad standard of *International Shoe Co.* v. *Washington, supra,* will prevail, and that any change will be, most likely, a further extension. *Smyth* v. *Twin State Improvement Corporation, supra,* 572

We do not propose to deal in outworn abstractions when the Supreme Court of the United States has stated the issue in terms of the considerations actually involved. 16 U. Chi. L. Rev. 523, 533. The rule of the International Shoe case, restated to apply to the instant case, follows. The foreign corporation is required to have certain minimum contacts with the taxing state such that payment of the tax does not offend traditional notions of fair play and substantial justice. The demands of due process may be met by such contacts of the corporation with the taxing state as make it reasonable, in the context of our federal system of government, to require the corporation to pay the tax. Whether due process is satisfied must depend upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. *International Shoe Co.* v. *Washington, supra.* It is safe to say that the cases which upheld the state's power under the old tests also satisfy this new test. The same, however, does not hold true of those cases which denied the state's power under the old tests. See Anno., 94 L Ed 1167, 1183. "The pulverizing approach" of the earlier decisions is duly noted in *United States* v. *Scophony Corporation,* 333 US 795, 817, 68 S Ct 855, 92 L Ed 1091, 1105.

The contacts, and the only contacts, which the plaintiff had with the State of Vermont were twofold in nature. First, it obtained a certificate of approval, which as we have seen, is a limited permission to do business in Vermont. Thereby it elected to avail itself of the benefit and protection of the state laws and regulations relating to traffic in intoxicating liquor. The certificate of approval and its implicits were and are a part of a coordinated plan on the part of the state to control traffic in intoxicants from manufacturer through wholesaler and retailer to ultimate consumer. V. S. 47, Chapter 271. No one will question that exceptional problems are involved in successfully regulating trade in intoxicating liquor. *Carter* v. *Virginia, supra.* Under the certificate of approval the plaintiff acted in Vermont; it appointed a distributor; it assigned the distributor a territory; it made monthly reports to the commissioner. Moreover, it agreed to do further acts here as the occasion required; to comply with the regulations of the liquor

control board; to notify the board of any change in distributors or territories; and in case of a change of distributors, to make provision for taking over the stock on hand. All these are local, not interstate, activity.

 The second group of local contacts consists of these: extensive advertising; continuous and systematic promotional work tied in with and related to the area advertising, and aimed to preserve and increase the market for Ruppert products in Vermont. Preserving and increasing a local consumers' market is an intrastate activity, and not "mere solicitation." See *Frene* v. *Louisville Cement Co.,* 77 US App DC 129, 134 F2d 511, 518, 146 ALR 926. It was no mean market, either, for this small state; the distributor bought $628,587.00 worth of Ruppert malt beverages in 1947, and $718,311.00 in 1948.

To the extent that the plaintiff corporation exercised the privilege of conducting activities within this state, it enjoyed the benefits and protection of the laws of this state. *International Shoe Co.* v. *Washington, supra.* We consider and hold that the quality and nature of the activity of the corporation and its agent in Vermont satisfy the minimum contact rule; that fair play and substantial justice require it to pay this minimum tax; and that such payment is reasonable in the context of our federal system of government. The holding is, therefore, in accord with the constitutional doctrines of *International Shoe Co.* v. *Washington, supra.* The minimum tax does not offend the due process clause of the federal constitution.

 We are asked to rule this tax invalid under Article I, § 8, paragraph 3 of the constitution of the United States of America, being the so-called commerce clause. The grounds advanced have been considered and answered hereinabove: interstate commerce in beer is subject to state control; the plaintiff sought and obtained a limited privilege of doing business in Vermont, and a part of its activities were local not interstate. *Spector Motor Service Inc.* v. *O'Connor,* 340 US 620, 71 S Ct 508, 95 L Ed 573; *Southern Natural Gas Corporation* v. *Alabama,* 301 US 148, 57 S Ct 696, 81 L Ed 970; Anno. 105 ALR 11, 36; Anno. 139 ALR 950, 956. The validity of a franchise tax upon a foreign corporation under the commerce clause depends upon the circumstances of each case, and upon the practical operation and effect of the tax; the nature of the corporation and its business is an important element. Anno., 139 ALR 950, 955. There is no question of discrimination, because the

minimum tax places the plaintiff squarely on a footing with domestic corporations. V. S. 47, § 950. There is no showing of any direct burden on interstate commerce, the effect upon that commerce being incidental and remote. *Southern Natural Gas Co.* v. *Alabama, supra; Postal Telegraph & Cable Co.* v. *Adams,* 155 US 688, 15 S Ct 360, 39 L Ed 311. The minimum tax is valid under the commerce clause.

It follows that the appeal sets up grounds for some relief, although not all that is claimed therein. *Order sustaining demurrer reversed, and cause remanded for further proceedings not inconsistent with this opinion.*