## Staunton

COMMONWEALTH OF VIRGINIA v. AMERICAN RADIATOR AND STANDARD SANITARY CORPORATION.

September 2, 1960.

Record No. 5116.

Present, All the Justices.

The opinion states the case.

*R. D. McIlwaine, III, Assistant Attorney General (A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

*H. Brice Graves* and *John W. Riely* (*Hunton, Williams, Gay, Powell & Gibson*, on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

■ American Radiator and Standard Sanitary Corporation, hereinafter called taxpayer, filed an application in the lower court pursuant to the provisions of § 58-1130, *et seq.*, Code of Virginia, 1950, seeking the correction of alleged erroneous income tax assessments for the taxable years 1952 through 1956, and a refund of the taxes paid.

On June 3, 1959, the court entered its order holding in favor of taxpayer with respect to the taxable years 1954, 1955, and 1956, and entered judgment against the Commonwealth in the amount of $24,-458.02. Taxpayer conceded that taxes paid by it for the years 1952 and 1953 could not be recovered because of the statute of limitations. Code, § 58-1130. Upon petition of the Commonwealth we granted a writ of error and *supersedeas.*

The facts which have been stipulated may be summarized as follows:

Taxpayer is a Delaware corporation with its principal place of business in New York City. It qualified to do business in Virginia in 1939 and remains qualified to the present time. The principal business of taxpayer consists of the manufacture and wholesale distribution of plumbing fixtures, heating and air conditioning equipment, mechanical draft fans, and other miscellaneous products. Taxpayer does not maintain any manufacturing facilities, stock of goods or inventory in Virginia.

From January 1, 1952 through June 30, 1956, taxpayer maintained a sales office in Richmond, with J. D. Rogers, a resident of the City of Richmond, listed as manager. The territory covered by the Richmond sales office included (1) all that part of Virginia outside of the City of Staunton and the Fredericksburg and Winchester trading areas (which latter areas included Alexandria, Arlington and Rosslyn), and (2) the northern part of North Carolina. From six to nine salesmen were attached to the Richmond office during the years under consideration, all but two of whom were residents of Virginia, while the clerical staff of the office ranged in number from one to nine persons. Thus there were at all times during these years from nine to sixteen agents or employees of taxpayer attached to

the Richmond office, two of the salesmen being residents of and solicitors of sales in North Carolina.

From 1952 to the present, the City of Staunton and the Fredericksburg and Winchester trading areas were covered by two salesmen of taxpayer who were non-residents of Virginia. During these years seven local wholesale distributors of the taxpayer in these areas were contacted by such salesmen and from time to time by other non-resident personnel of taxpayer.

Orders solicited by salesmen operating from the Richmond office were forwarded to the Pittsburgh General Office of taxpayer for acceptance or rejection. Sales accepted were shipped, billed and collected from locations outside the State and the published freight terms of taxpayer were made f.o.b. taxpayer's plants located at various places in the United States outside Virginia.

During the years in question taxpayer's salesmen solicited orders from selected local wholesale distributors who handled taxpayer's products. The salesmen usually called upon such local wholesale distributors at least once a week, sometimes more frequently and sometimes less frequently. Orders were solicited from and sales were made to such local wholesale distributors only, of which there were fourteen in Virginia solicited by salesmen attached to the Virginia office.

In addition, it was the practice of taxpayer's salesmen to contact prospective local users of taxpayer's products, such as heating contractors, plumbing contractors, builders, architects, engineers, and occasionally consumers, to encourage them to use and install taxpayer's products and to induce them to purchase such products from taxpayer's selected local wholesale distributors. In this connection, taxpayer's salesmen would follow the progress of construction awards and call upon both its selected local wholesale distributors and prospective local users of taxpayer's products as contract awards were made and various heating contractors, plumbing contractors, builders, architects, engineers and consumers were ready to buy products of the type manufactured by taxpayer.

On certain undertakings engaged in by prospective local users of taxpayer's products, including most commercial and educational jobs, architects, engineers or contractors would request submission of brochures illustrating the specific items of taxpayer's products which they proposed to use on a particular enterprise, together with necessary data, i.e., dimensions and descriptions, relating to such items.

This data would be furnished to such prospective local users by taxpayer's salesmen in the form of "roughing-in" books, which were compiled to meet the specific request of a local user, from printed material kept on file by taxpayer. Brochures and "roughing-in" books had to be approved before the local wholesale distributor would release the order for shipment.

Taxpayer insists, and the trial court held, that during the years in question taxpayer was engaged exclusively in interstate commerce in Virginia and thus not subject to the Virginia income tax statute. On the other hand it is the position of the Commonwealth that the operations conducted by taxpayer's agents in Virginia, particularly the activities of its salesmen in inducing prospective users of taxpayer's products to purchase such products from taxpayer's selected local wholesale distributors—in effect, inducing sales from a Virginia wholesaler to a Virginia retailer or consumer—are not in interstate commerce as contended by taxpayer, but on the contrary constitute intrastate, domestic or local commerce, and thus taxpayer was doing business in Virginia within the meaning of Code, § 58-128.

It is conceded by both parties that no constitutional question is here involved. The case turns upon the interpretation of the Code section (58-128) as it applies to the stipulated facts. The relevant part of the section reads:

"Every domestic corporation organized under the laws of this State and every foreign corporation doing business in this State * * * shall pay for each taxable year a tax to be computed by the Department of Taxation upon the entire net income, as herein defined, of such corporation, derived from business done, property located or sources in this State; and such tax is hereby annually levied for each taxable year."

Thus the question involved is: Was taxpayer entitled to a refund of income taxes for the years 1954, 1955, and 1956, upon the ground that it was not doing business in Virginia during such years within the meaning of § 58-128 of the Code?

Taxpayer focuses its claim to the exemption on the following statement taken from its brief:

"From January 1, 1952, to June 30, 1956, the taxpayer maintained a sales office in Richmond, Virginia. The salesmen from that office solicited orders in Virginia and in North Carolina, but they were not authorized to accept or confirm orders, and all orders so solicited were forwarded to the Pittsburgh General Office for acceptance or

rejection. Thus the salesmen of the taxpayer working from the Richmond office were not, themselves, authorized to conclude any sales, and they did not make any collections. All sales that were accepted by the Pittsburgh office were shipped, billed and collected from locations outside Virginia, and such shipments were made f.o.b. the plants of the taxpayer located at various places in the United States outside Virginia. All sales made by the taxpayer were to wholesale distributors. None of such sales was made to the ultimate consumer of the property."

Thus it is contended that taxpayer's activities were entirely in interstate commerce and cannot be interpreted as "doing business in this State."

A mere reading of the stipulated facts negatives such an interpretation. Clearly taxpayer was not exclusively engaged in interstate commerce during the taxable years under consideration and was not entitled to a refund of income taxes for such years. It is manifest that taxpayer was "doing business" in Virginia within the meaning of § 58-128. Its agents or representatives were employed for no other purpose. The regular, systematic, continuous and substantial activities carried on in Virginia by taxpayer's salesmen, the solicitation of orders from its local wholesale dealers, inducing the resale of taxpayer's products in Virginia from a Virginia wholesaler to a Virginia retailer or consumer, in which activities it was the practice of taxpayer's salesmen to engage, constitute intrastate, domestic or local commerce, and thus taxpayer was doing business in Virginia within the meaning of Code, § 58-128.

Supporting this view is the decision of the U. S. Supreme Court in *Cheney Bros. Co.* v. *Massachusetts*, 246 U.S. 147, 155, 38 S. Ct. 295, 62 L. ed. 632. In that case the Supreme Court was concerned "with an excise imposed by Massachusetts in 1913 on each of seven foreign corporations on the ground that each was doing a local business in the State." Objection to the tax, based upon the Commerce Clause, having been overruled by the State court, the facts and circumstances surrounding the operation in Massachusetts of each of the seven corporations involved were given independent consideration. One of these corporations was the Northwestern Consolidated Milling Company, in whose case the imposition of the Massachusetts tax was sustained. With respect to this corporation, the Supreme Court, in a unanimous decision, observed (246 U.S., at 155):

"Northwestern Consolidated Milling Company

"This company was incorporated under the laws of Minnesota, operates flour mills there, and sells the flour to wholesale dealers throughout the country. It has an office in Massachusetts where it employs several salesmen for the purpose of inducing local tradesmen to carry and deal in its flour. These salesmen solicit and take orders from retail dealers and turn the same over to the nearest wholesale dealer, who fills the order and is paid by the retailer. Thus the salesman, though not in the employ of the wholesaler, is selling flour for him. Of course this is a domestic business,—inducing one local merchant to buy a particular class of goods from another,—and may be taxed by the State, regardless of the motive with which it is conducted."

The above-quoted decision of the Supreme Court with respect to the Northwestern Consolidated Milling Company in the *Cheney Brothers* case, *supra*, was approved in *Ozark Pipe Line Corp.* v. *Monier*, 266 U. S. 555, 45 S. Ct. 184, 69 L. ed. 439. The decision has also been held to be controlling in many State courts. *City of Birmingham* v. *Hoover Suction Sweeper Co.*, 19 Ala. App. 661, 100 So. 83; *Brown* v. *Globe Laboratories*, 165 Neb. 138, 84 N. W. 2d 151; *Ruppert* v. *Commissioner of Taxes*, 117 Vt. 83, 85 A. 2d 584.

Unlike the above-cited decisions, none of the cases relied upon by taxpayer involves the application of a tax statute to a factual situation in which salesmen of a non-resident corporation regularly and systematically contacted prospective local users of the corporation's products and attempted to induce such local users to purchase the corporation's products from local wholesalers.

The rule is firmly established in this Commonwealth and elsewhere that a tax assessment made by the proper authorities is *prima facie* correct and valid, and the burden is on the taxpayer to show that such assessment is erroneous. *Thornhill Wagon Co.* v. *Commonwealth*, 144 Va. 194, 206, 131 S. E. 445; *Norfolk* v. *Snyder*, 161 Va. 288, 291, 170 S. E. 721.

Taxpayer relies heavily upon the case of *Commonwealth* v. *Imperial Coal Sales Co.*, 161 Va. 718, 167 S. E. 268, which case was reversed by the Supreme Court. 293 U. S. 15, 55 S. Ct. 12, 79 L. ed. 171, (further proceedings, 166 Va. 27, 183 S. E. 234). It is asserted in taxpayer's brief that "for more than twenty-five years the first *Imperial Coal Sales Company* case has stood unquestioned in any court. During all of this period the General Assembly has known that the Virginia income tax does not apply in a case such as this."

It is then argued that the General Assembly has made no change in the Virginia income tax statute during the specified period.

The fallacy of this position is that the *Imperial Coal Sales Company* case did not purport to pass upon the applicability of the Virginia income tax statute to a factual situation similar to that presented here. Indeed, the inference of knowledge by the General Assembly is just the opposite of that asserted by taxpayer, namely, that it is aware of the fact that the income tax statute does apply to a case such as this.

It is stipulated that taxpayer qualified to do business in Virginia in 1939 and has remained so qualified to the present time. It has been assessed with and paid income taxes to the Commonwealth every year from 1939 through 1956. These repeated annual assessments strongly indicate that the long-standing interpretation accorded the statute in question by the taxing authorities has been that taxpayer is doing business in Virginia within the meaning of Code, § 58-128, and is subject to the tax on income imposed by it.

In accordance with this administrative interpretation, it has been the uniform and continuous practice of the State Tax Department to assess an annual tax upon the income of taxpayer, and until the inception of the instant case these taxes have been paid. It is this administrative interpretation of which the legislature is presumed to be cognizant.

The elementary rule of statutory interpretation is that the construction accorded a statute by public officials charged with its administration and enforcement is entitled to be given weight by the court. The legislature is presumed to be cognizant of such construction. When it has long continued without change the legislature will be presumed to have acquiesced therein. *Smith* v. *Bryan,* 100 Va. 199, 204, 40 S. E. 652. See also 82 C.J.S., Statutes, § 359 (a) and (c), pp. 761-781; 50 Am. Jur., Statutes, § 319, pp. 309-311; 2 Sutherland on Statutory Construction, 3rd Ed., §§ 5103-5105, pp. 512-517.

We conclude that taxpayer is not entitled to a refund of income taxes for the years 1954, 1955 and 1956. Therefore the order of the trial court is reversed and final judgment is here entered in favor of the Commonwealth.

*Reversed and final judgment.*